Michael R. Johnson, Esq. (A7070)
David H. Leigh (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah  84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email: mjohnson@rqn.com
Email:  dleigh@rqn.com

*Attorney for Keystone Private Income Fund and Keystone National Group, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**HALL LABS, INC.,**<br><br>Debtor-in-Possession. | **Bankruptcy No. 25-21038**<br><br>Chapter 11<br><br>Honorable Joel T. Marker |

---

### KEYSTONE'S (I) NOTICE OF INTEREST IN AND REFUSAL TO CONSENT TO USE OF CASH COLLATERAL, AND (II) DEMAND FOR SEGREGATION AND ACCOUNTING OF CASH COLLATERAL

---

Pursuant to 11 U.S.C. § 546(b), Keystone Private Income Fund and Keystone National Group, LLC (collectively, the "**Keystone Creditors**"), secured creditors of Hall Labs, Inc., the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned Chapter 11 bankruptcy case (the "**Bankruptcy Case**"), through counsel, hereby give notice to the Debtor and to other parties in interest of the Keystone Creditor's perfected security interest in the following collateral more fully described in that certain *Security Agreement*, dated August 11, 2021, by and between the Debtor, as Grantor, in favor of Keystone National Group, LLC, as administrative and

collateral agent:

.

2.    **Grant of Security Interest**.    As security for the Obligations and other liabilities and obligations owed by Borrower to Agent or Lender as set forth in the Loan Documents, Grantor hereby pledges and grants to Agent on behalf of and for the benefit of Lenders, and Agent on behalf of and for the benefit of Lenders hereby accepts, a continuing security interest of first priority in all right, title and interests of Grantor in and to all of its assets, including without limitation, its interests in collectively, all of the now- owned and hereafter acquired, created or arising tangible and intangible assets and other property of Borrower, wherever located, including without limitation all loans, payment obligations, properties, assets, receivables, accounts, instruments, goods, equipment, contract rights, agreements, security interests, deeds of trust, general intangibles, claims, guarantees, securities, documents, cash, deposit accounts, supporting documentation, instruments, chattel paper, investment property, stock or other equity interests, financial assets and/or any other properties or assets purchased or otherwise acquired by Grantor, whether now owned or hereafter acquired, including Borrower's books and records relating thereto, and shall also include all renewals, replacements and substitutions of all of the foregoing, all products, collections, distributions, proceeds and/or any other amounts received from the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions and accessions to and proceeds thereof (collectively, the "**Collateral**").

A true and correct copy of the above-referenced *Security Agreement* is attached hereto as Exhibit "A."  A true and correct copy of the UCC-1 Financing Statement, filed August 11, 2021 with the Utah Division of Corporations and Commercial Code, and demonstrating that the Keystone Creditor's interest in the forgoing Collateral was properly perfected under applicable law, is attached hereto as Exhibit "B."

A true and correct copy of the *Judgment* from the Utah Third District Court for Salt Lake County, dated February 7, 2025, in favor of the Keystone Creditors and against the Debtor and Carl Belliston, as Trustee of the David Hall Trust, jointly and severally, in the principal amount of $13,800,000.00, plus interest in the amount of $627,899.98 as of August 30, 2024, plus after accruing interest at the rate of eighteen percent (18%) per annum, both before and after the entry of the judgment, plus attorneys' fees in the amount of $14,652.60, is attached hereto as Exhibit "C."

As of the March 5, 2025 Petition Date, the amount owed on the Judgment was

$15,708,371.80, calculated as follows:

| | |
|---|---|
| Principal: | $13,800,000.00 |
| Interest to August 30, 2024: | $     627,899.98 |
| Interest August 31, 2024-March 5, 2025: | $  1,265,819.18 |
| Attorneys' Fees and Costs: | $       14,652.60 |
| TOTAL: | $15,708,371.80 |

The Judgment further provides that the Keystone Creditor's liens on the assets of the

Debtor are the first and senior liens on the Debtors' assets:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' lien and
security interest is the first and prior lien on all tangible and intangible assets of Defendant Hall
Labs LLC, now owned or hereafter acquired, including but not limited to all loans, payment
obligations, properties, assets, receivables, accounts, instruments, goods, equipment, contract
rights, agreements, security interests, deeds of trust, general intangibles, claims, guarantees,
securities, documents, cash, deposit accounts, supporting documentation, instruments, chattel
paper, investment property, stock or other equity interests, financial assets of Defendant Hall
Labs LLC (the "**Hall Labs Collateral**") for the payment of the obligations of Defendant Hall
Labs LLC under this Judgment, superior to all right, title or interest of the Defendants herein,
and all other parties claiming under them, and ordering, at the request of Plaintiff, that a Writ of
Replevin, and accompanying Writ of Assistance, and/or a Writ of Execution shall be issued
directing the constable or Sheriff of Salt Lake County, or such other appropriate county (or such
other appropriate officer of the Court) to seize and sell the Hall Labs Collateral according to the
laws and practices of this Court, to satisfy the amounts which are found herein due and owing by
Defendant Hall Labs LLC and that the proceeds of such sale be applied first to the costs of
foreclosure, including attorneys fees, and then to the indebtedness and obligations of Defendant
Hall Labs LLC herein.

By this Notice of Interest, the Keystone Creditors hereby invoke their statutory rights (to

the extent necessary, and without waiving their right to claim perfection under applicable non-

bankruptcy law) in accordance with 11 U.S.C. § 546(b).  The Debtor and other parties in interest

are hereby further advised (i) that the Keystone Creditors, having an interest in cash collateral,

<u>do not consent</u> to the Debtor's or the estate's use thereof absent an acceptable cash collateral

agreement and adequate protection stipulation; and (ii) the Debtor and the estate are prohibited from using the Keystone Creditor's cash collateral, except as otherwise authorized by 11 U.S.C. § 363(c)(2).  Further, any unauthorized use of the Keystone Creditor's cash collateral will result in a request by the Keystone Creditors for either dismissal or conversion of this Bankruptcy Case, or a request for appointment of a Chapter 11 trustee.

DATED this 7th day of March, 2025.

RAY QUINNEY & NEBEKER P.C.

/s/ Michael R. Johnson
Michael R. Johnson
*Attorney for Keystone Private Income Fund
and Keystone National Group, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2025, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case.

*/s/ Annette Sanchez*

1701215

# **<u>EXHIBIT A</u>**

**EXECUTION COPY**

## SECURITY AGREEMENT

This Security Agreement (this "**Agreement**") is made and entered into as of August 11, 2021, by Hall Labs, LLC, a Utah limited liability company ("**Grantor**") in favor of Keystone National Group, LLC, a Delaware limited liability company, as administrative and collateral agent under the Loan Agreement for the benefit of Lenders ("**Agent**").

## RECITALS

A.    Grantor, Agent and Lenders have entered into a Loan Agreement of even date herewith (the "**Loan Agreement**"), pursuant to which Lenders may extend credit to Grantor.

B.    As additional security and in order to further induce Lenders to extend the credit to Grantor as set forth in the Loan Agreement, Grantor has agreed to enter into this Agreement and to grant to Lenders the security interest in the Collateral pursuant to the terms and conditions set forth below.

C.    Capitalized terms not otherwise defined herein shall have the meaning set forth in the Loan Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises, covenants, representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby covenant and agree as follows:

1.    **Definitions**.    Unless otherwise defined herein, all terms defined in the Uniform Commercial Code, as in effect in the State of Utah from time to time (the "**UCC**"), shall have the respective meanings given to those terms in the UCC.  Capitalized terms not otherwise defined herein or in the UCC shall have the meaning set forth in the Loan Agreement.

2.    **Grant of Security Interest**.    As security for the Obligations and other liabilities and obligations owed by Borrower to Agent or Lender as set forth in the Loan Documents, Grantor hereby pledges and grants to Agent on behalf of and for the benefit of Lenders, and Agent on behalf of and for the benefit of Lenders hereby accepts, a continuing security interest of first priority in all right, title and interests of Grantor in and to all of its assets, including without limitation, its interests in collectively, all of the now-owned and hereafter acquired, created or arising tangible and intangible assets and other property of Borrower, wherever located, including without limitation all loans, payment obligations, properties, assets, receivables, accounts, instruments, goods, equipment, contract rights, agreements, security interests, deeds of trust, general intangibles, claims, guarantees, securities, documents, cash, deposit accounts, supporting documentation, instruments, chattel paper, investment property, stock or other equity interests, financial assets and/or any other properties or assets purchased or otherwise acquired by Grantor, whether now owned or hereafter acquired, including Borrower's books and records relating thereto, and shall also include all renewals, replacements and substitutions of all of the foregoing, all products, collections, distributions, proceeds and/or any other amounts received from the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions and accessions to and proceeds thereof (collectively, the "**Collateral**").

3.    **Representations and Warranties of Grantor**.    In addition to those representations and warranties set forth elsewhere in the Loan Agreement or other transaction documents, Grantor hereby represents and warrants to Agent and Lenders that:

(a)    the execution, delivery and performance by Grantor of this Agreement and all of the other transaction documents to which Grantor is a party have been duly authorized by all necessary action of Grantor and that Grantor has the right to pledge and grant Lenders the security interest in the Collateral granted under this Agreement;

(b)    all information heretofore, herein or hereafter supplied to Agent and Lenders by or on behalf of Grantor with respect to the Collateral is true and correct in all material respects as of the date thereof;

(c)    this Agreement and each of the transaction documents executed by Grantor has been duly executed and delivered by Grantor and constitutes a legal, valid and binding obligation of Grantor, enforceable against Grantor in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity;

(d)    Grantor is the sole record and beneficial owner of the Collateral and that no other person or entity has any right, title, claim or security interest (by way of lien, encumbrance, security interest or otherwise) in, against or to the Collateral except for Permitted Liens; and

(e)    this Agreement creates a legal, valid and binding security interest in favor of Lenders in the Collateral to secure the indebtedness, liabilities and other obligations under the Loan Agreement, including interest and upon the filing of UCC-1 financing statements in the appropriate filing offices, Lenders have a continuing first priority perfected security interest (except with respect to Permitted Indebtedness) in the Collateral to the extent that a security interest in the Collateral can be perfected by the filing of UCC-1 financing statements pursuant to the UCC.

4.    **Covenants Relating to Collateral**.  In addition to those covenants, promises and obligations set forth elsewhere in the transaction documents, Grantor hereby agrees, promises and covenants:

(a)    to maintain good and marketable title to all Collateral free and clear of all liens, encumbrances and security interests except for Permitted Liens and to perform all acts that may be reasonably necessary to maintain, preserve, protect and perfect the Collateral, the lien granted to Lender herein and the perfection and priority of such lien;

(b)    to defend all of Agent and Lenders' right, title and security interest in and to the Collateral against the claims of any person or entity;

(c)    to promptly notify Agent and Lenders of any claim, action or proceeding affecting the Collateral, or any part thereof, or the security interest created hereunder and, at Grantor's expense, defend Lenders' security interest in the Collateral against the claims of any person or entity;

(d)    to procure, execute and deliver from time to time any endorsements, assignments, certificates, statements and other writings reasonably deemed necessary or appropriate by Agent and Lenders to perfect, maintain and protect its lien hereunder and the priority thereof and to deliver to, promptly upon the request of, Agent or Lenders all originals evidencing the Collateral;

(e)    to appear in and defend any action or proceeding which may affect its title to or Lenders' interest in the Collateral;

(f)      to keep separate, accurate and complete records of the Collateral and to provide Agent with such records and such other reports and information relating to the Collateral as Agent may reasonably request from time to time;

(g)      without the prior written consent of Agent, not to surrender or lose possession of (other than to Lenders), sell, encumber, lease, rent, or otherwise dispose of or transfer any Collateral or right or interest therein other than in the ordinary course of business or as permitted under the Loan Agreement, and to keep the Collateral free of all liens; and

(h)      to permit Agent and its representatives the right, at any time during normal business hours, upon reasonable prior notice, to visit and inspect the properties of Grantor and its corporate, financial and operating records, and make abstracts therefrom, and to discuss Grantor's affairs, finances and accounts with its managers, officers and independent accountants.

5.      **Authorized Action by Lender**.  Grantor hereby irrevocably appoints Agent as its attorney-in-fact (which appointment is coupled with an interest) and agrees that during the occurrence of an Event of Default (after any applicable cure period) Agent may perform (but Agent shall not be obligated to and shall incur no liability to Grantor or any third party for failure so to do) any act which Grantor is obligated by this Agreement to perform, and to exercise such rights and powers as Grantor might exercise with respect to the Collateral, including the right to (a) collect by legal proceedings or otherwise and endorse, receive and receipt for all dividends, interest, payments, proceeds and other sums and property now or hereafter payable on or on account of the Collateral; (b) enter into an agreement pertaining to, or deposit, surrender, accept, hold or apply other property in exchange for the Collateral; (c) make any compromise or settlement, and take any action it deems advisable, with respect to the Collateral; (d) insure, process and preserve the Collateral.  Grantor agrees to reimburse Lender upon demand for any reasonable costs and expenses, including attorneys' fees, Agent may incur while acting as Grantor's attorney-in-fact hereunder, all of which costs and expenses are included in the obligations set forth in the Loan Agreement; (e) file UCC financing statements and execute other documents, instruments and agreements required hereunder; or (f) enter into, assign, modify or terminate servicing arrangements.

6.      **Litigation and Other Proceedings**.  Upon the occurrence and during the continuation of any Event of Default, Agent shall have the right but not the obligation to enforce any rights in the Collateral in which event Grantor shall at the request of Agent do any and all lawful acts and execute any and all documents reasonably required by Agent in aid of such enforcement.  Grantor agrees at Agent's request to cooperate with Agent in connection with the disposition of any and all of the Collateral and to execute and deliver any documents which Agent shall reasonably request to permit disposition of the Collateral.

7.      **Default and Remedies**.

(a)      ***Default***.  Grantor shall be deemed in default under this Agreement upon the occurrence and during the continuance of an Event of Default.

(b)      ***Remedies***.  Upon the occurrence and during the continuance of any such Event of Default, Agent shall have (i) the right to obtain possession, ownership and control of the Collateral as satisfaction of any Event of Default, (ii) rights of a secured creditor under the UCC, and (iii) all rights granted by this Agreement and by law, including, without limitation, the right to: (a) require Grantor to make any certificates, instruments or other documents evidencing the Collateral available to Agent at a place to be designated by Lender; (b) negotiate, solicit, document or otherwise prepare the Collateral for disposition in any manner and to the extent Agent deems appropriate; (c) sell or otherwise dispose of, at the location of Agent's election, the Collateral, in whole or in part, by public or private proceedings, and by way of one or more contracts; (e) retain the Collateral in satisfaction of the obligations evidenced by the

Loan Agreement and further to elect whether such retention shall be in full or partial satisfaction of the obligations evidenced by the Loan Agreement; or (f) enter into, assign, modify or terminate servicing arrangements.

8. **Miscellaneous**.

(a) ***Notices***.   All notices, requests, demands, consents, instructions or other communications required or permitted hereunder shall in writing and faxed, mailed or delivered to each party at the address set forth on the signature pages hereto or at such other address or facsimile number as shall be furnished to Agent or Grantor, as the case may be, in writing.  All such notices and communications will be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one business day after being delivered by facsimile transmission (with receipt of appropriate confirmation), (iv) one business day after being deposited with an overnight courier service of recognized standing or (v) four days after being deposited in the U.S. mail, first class with postage prepaid.

(b) ***Termination of Security Interest***.  Upon the payment in full of all obligations set forth in the Loan Agreement, the security interest granted herein shall terminate and all rights to the Collateral shall revert to Grantor.  Upon such termination, Agent hereby authorizes Grantor to file any UCC termination statements necessary to effect such termination and further agrees to execute and deliver to Grantor any additional documents or instruments as Grantor shall reasonably request to evidence such termination.

(c) ***Nonwaiver***.  No failure or delay on Agent's part in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

(d) ***Amendments and Waivers***.  This Agreement may not be amended or modified, nor may any of its terms be waived, except by written instruments signed by Grantor and Agent.  Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

(e) ***Assignments***.  This Agreement shall be binding upon and inure to the benefit of Agent and Grantor and their respective successors and assigns; *provided, however*, that Grantor may not sell, assign or delegate rights and obligations hereunder, by operation of law or otherwise, without the prior written consent of Agent.

(f) ***Cumulative Rights***.   The rights, powers and remedies of Agent under this Agreement shall be in addition to all rights, powers and remedies given to Agent by virtue of any applicable law, rule or regulation of any governmental authority, any transaction document or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Agent's rights hereunder.  Grantor waives any right to require Agent to proceed against any person or entity or to exhaust any Collateral or to pursue any remedy in Agent's power.

(g) ***Partial Invalidity***.  If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law or any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Agreement nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(h) ***Expenses***.  Grantor shall pay on demand all reasonable fees and expenses, including reasonable attorneys' fees and expenses, incurred by Agent in connection with custody,

preservation or sale of, or other realization on, any of the Collateral or the enforcement or attempt to enforce any of the Obligations which is not performed as and when required by this Agreement.

(i)     ***Construction***.  Each of this Agreement and the other transaction documents is the result of negotiations among, and has been reviewed by, Grantor, Agent and their respective counsel. Accordingly, this Agreement and the other transaction documents shall be deemed to be the product of all parties hereto, and no ambiguity shall be construed in favor of or against Grantor or Agent.

(j)     ***Entire Agreement***.  This Agreement together with the other transaction documents constitute and contain the entire agreement among Grantor and Agent with respect to the transactions contemplated herein and supersede any and all prior agreements, negotiations, correspondence, understandings and communications among the parties, whether written or oral, respecting the subject matter hereof.

(k)     ***Governing Law***.  This Agreement shall be governed by and construed in accordance with the laws of the State of Utah without reference to conflicts of law rules (except to the extent governed by the UCC).

(l)     ***Counterparts***. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same agreement. Facsimile copies of signed signature pages will be deemed binding originals.

*(Signature Page Follows)*

IN WITNESS WHEREOF, the parties have caused this Security Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date and year first written above.

**GRANTOR:**

**HALL LABS, LLC**
a Utah limited liability company

By: _Davi P Hall_

Name: _DAVID P HALL_

Title: _Manager, CEO_

_8/29-2-18f_

Address:

3000 Sierra Vista Way
Provo, Utah 84606

**AGENT:**

**KEYSTONE NATIONAL GROUP, LLC**
a Delaware limited liability company

By: _____

    John Earl
    Managing Member

Address:

60 E. South Temple, Suite 2100
Salt Lake City, Utah 84111

IN WITNESS WHEREOF, the parties have caused this Security Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date and year first written above.

**GRANTOR:**                                                  **AGENT:**

**HALL LABS, LLC**                                          **KEYSTONE NATIONAL GROUP, LLC**
a Utah limited liability company                    a Delaware limited liability company

By: _____          By: _____
Name: _____          John Earl
Title: _____          Managing Member

Address:                                                          Address:

3000 Sierra Vista Way                                  60 E. South Temple, Suite 2100
Provo, Utah 84606                                        Salt Lake City, Utah 84111

# **EXHIBIT B**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>**Kathryn Shelton** | **Filed in the Office of**<br>*L. Veillette*<br>Director, Division of<br>Corporations and<br>Commercial Code |
| B. E-MAIL CONTACT AT FILER (optional)<br>**shelton.kathryn@dorsey.com** | |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address)<br><br>**Kathryn Shelton**<br><br>**Dorsey & Whitney LLP**<br>**111 South Main Street, Suite 2100**<br><br>**Salt Lake City UT 84111 USA** | |

| | |
|---|---|
| Filing Number<br>**210811796492-8** | |
| Initial Filing Number<br>**210811796492-8** | |
| Filed On<br>**August 11, 2021 05:06 PM** | |
| Lapse Date<br>**08/11/2026** | |
| Number of Pages<br>**2** | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **HALL LABS, LLC** | | | | | |
| 1b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>**3000 SIERRA VISTA WAY** | | CITY<br>**PROVO** | STATE<br>**UT** | POSTAL CODE<br>**84606** | COUNTRY<br>**USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **KEYSTONE NATIONAL GROUP, LLC, AS ADMINISTRATIVE AND COLLATERAL AGENT** | | | | | |
| 3b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>**60 EAST SOUTH TEMPLE, SUITE 2100** | | CITY<br>**SALT LAKE CITY** | STATE<br>**UT** | POSTAL CODE<br>**84111** | COUNTRY<br>**USA** |

4. COLLATERAL: This financing statement covers the following collateral:
**A CONTINUING SECURITY INTEREST OF FIRST PRIORITY IN ALL RIGHT, TITLE AND INTERESTS OF DEBTOR IN AND TO ALL OF ITS ASSETS, INCLUDING WITHOUT LIMITATION, ITS INTERESTS IN COLLECTIVELY, ALL OF THE NOW OWNED AND HEREAFTER ACQUIRED, CREATED OR ARISING TANGIBLE AND INTANGIBLE ASSETS AND OTHER PROPERTY OF DEBTOR, WHEREVER LOCATED, INCLUDING WITHOUT LIMITATION ALL LOANS, PAYMENT OBLIGATIONS, PROPERTIES, ASSETS, RECEIVABLES, ACCOUNTS, INSTRUMENTS, GOODS, EQUIPMENT, CONTRACT RIGHTS, AGREEMENTS, SECURITY INTERESTS, DEEDS OF TRUST, GENERAL INTANGIBLES, CLAIMS, GUARANTEES, SECURITIES, DOCUMENTS, CASH, DEPOSIT ACCOUNTS, SUPPORTING DOCUMENTATION, INSTRUMENTS, CHATTEL PAPER, INVESTMENT PROPERTY, STOCK OR OTHER EQUITY INTERESTS, FINANCIAL ASSETS AND/OR ANY OTHER PROPERTIES OR ASSETS PURCHASED OR OTHERWISE ACQUIRED BY DEBTOR, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, INCLUDING DEBTOR'S BOOKS AND RECORDS RELATING THERETO, AND SHALL ALSO INCLUDE ALL RENEWALS, REPLACEMENTS AND SUBSTITUTIONS OF ALL OF THE FOREGOING, ALL PRODUCTS, COLLECTIONS, DISTRIBUTIONS, PROCEEDS AND/OR ANY OTHER AMOUNTS RECEIVED FROM THE FOREGOING, AND ANY AND ALL CLAIMS, RIGHTS AND INTERESTS IN ANY OF THE ABOVE AND ALL SUBSTITUTIONS FOR, ADDITIONS AND ACCESSIONS TO AND PROCEEDS THEREOF.**

**CAPITALIZED TERMS USED HEREINABOVE AND NOT OTHERWISE DEFINED IN THE LOAN AGREEMENT OR SECURITY AGREEMENT MADE AND ENTERED INTO AS OF AUGUST 11, 2021 BY AND BETWEEN THE DEBTOR AND SECURED PARTY SHALL HAVE THE MEANINGS PROVIDED IN THE U**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| **HALL LABS, LLC** | |

OR

| | | |
|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | | |
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

OR

| 10a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 10b. INDIVIDUAL'S SURNAME | | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

OR

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
**CC.**

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

**<u>EXHIBIT C</u>**

The Order of the Court is stated below:
**Dated:** February 07, 2025      /s/   ROBERT FAUST
                09:47:51 AM                      District Court Judge

Gregory S. Roberts (9092)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
  Telephone:  (801) 532-1500
  Facsimile:  (801) 532-7543
  mailto:groberts@rqn.com

*Attorneys for Plaintiffs*

<table>
<tr><td colspan="2" align="center">IN THE THIRD JUDICIAL DISTRICT COURT<br><br>SALT LAKE COUNTY, STATE OF UTAH</td></tr>
<tr><td>

KEYSTONE PRIVATE INCOME FUND, a
Delaware statutory trust, and KEYSTONE
NATIONAL GROUP, LLC, a Delaware
limited liability company, as administrative and
collateral agent,

       Plaintiffs,

   v.

HALL LABS, LLC, a Utah limited liability
company, and CARL BELLISTON, TRUSTEE
OF THE DAVID HALL TRUST,

    Defendants.

</td><td align="center">

**JUDGMENT**

<br><br>

Case No. 240907334

<br>

Judge Robert Faust

</td></tr>
</table>

1

Based upon the Ruling dated December 31, 2024 entered by the Court, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs Keystone Private Income Fund, a Delaware statutory trust (**KPIF**"), and Keystone National Group, LLC, a Delaware limited liability company ("**KNG**"), as administrative and collateral agent, (KPIF and KNG are referred to herein collectively as "**Keystone**") have judgment against Defendant Hall Labs LLC, a Utah limited liability company ("**Hall Labs**") for the principal sum of $13,800,000.00, together with accrued and unpaid interest as of August 30, 2024 in the amount of $627,899.98, together with interest accruing from and after August 30, 2024 at the contractual default rate of eighteen percent (18%) per annum, both before and after judgment.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs Keystone have judgment against Defendants, jointly and severally, for attorneys fees and costs incurred by Plaintiff as the entry of judgment in the amount of $14,652.60.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs can proceed to obtain all pledged collateral, including, all instruments, certificated and uncertificated securities, money and general intangibles of, relating to or arising from 3,699,501 shares of common stock of Vanderhall Motor Works, Inc., a Delaware corporation, together with all dividends (including cash dividends), other distributions (including redemption proceeds), or other property, securities or instruments.   Further, Plaintiff shall use the appropriate Writs issued to the constable or Sheriff of Salt Lake County, or such other appropriate county (or such other

2

appropriate officer of the Court) to seize and sell the Hall Trust Collateral according to the laws

and practices of this Court, to satisfy the amounts which are found herein due and owing by

Defendant Hall Labs LLC and that the proceeds of such sale be applied first to the costs of

foreclosure, including attorneys fees, and then to the indebtedness and obligations of Defendant

Hall Labs LLC herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' lien and

security interest is the first and prior lien on all tangible and intangible assets of Defendant Hall

Labs LLC, now owned or hereafter acquired, including but not limited to all loans, payment

obligations, properties, assets, receivables, accounts, instruments, goods, equipment, contract

rights, agreements, security interests, deeds of trust, general intangibles, claims, guarantees,

securities, documents, cash, deposit accounts, supporting documentation, instruments, chattel

paper, investment property, stock or other equity interests, financial assets of Defendant Hall

Labs LLC (the "**Hall Labs Collateral**") for the payment of the obligations of Defendant Hall

Labs LLC under this Judgment, superior to all right, title or interest of the Defendants herein,

and all other parties claiming under them, and ordering, at the request of Plaintiff, that a Writ of

Replevin, and accompanying Writ of Assistance, and/or a Writ of Execution shall be issued

directing the constable or Sheriff of Salt Lake County, or such other appropriate county (or such

other appropriate officer of the Court) to seize and sell the Hall Labs Collateral according to the

laws and practices of this Court, to satisfy the amounts which are found herein due and owing by

3

Defendant Hall Labs LLC and that the proceeds of such sale be applied first to the costs of

foreclosure, including attorneys fees, and then to the indebtedness and obligations of Defendant

Hall Labs LLC herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs are entitled

to issuance of a writ of replevin (i) enjoining Defendants from using the Hall Trust Collateral and

the Hall Labs Collateral (collectively, the "**Collateral**"); (ii) directing Defendants to deliver, or

cause to be delivered, the Collateral to Plaintiffs, (iii) directing that the Collateral be immediately

and permanently seized and taken from the possession of Defendants; (iv) requiring Defendants

to assemble and make available to Plaintiffs all records relating to the Hall Trust Collateral at any

place or places specified by Plaintiffs, and (v) ordering that all voting, ownership and other rights

are vested in Plaintiff KPIF and directing that all dividends, distributions and interest payments

related to the Hall Trust Collateral be delivered to Plaintiff KPIF

IT IS FURTHER ORDERED THAT THIS JUDGMENT MAY BE AUGMENTED IN

THE AMOUNT OF REASONABLE COSTS AND ATTORNEYS FEES EXPENDED IN

COLLECTING SAID JUDGMENT BY EXECUTION OR OTHERWISE AS SHALL BE

ESTABLISHED BY AFFIDAVIT.

IT IS SO ORDERED.

** In accordance with the Utah State District Courts E-filing Standard No. 4, and
URCP Rule 10(e), this Order does not bear the handwritten signature of
the Judge, but instead displays an electronic signature at the upper
right-hand corner of the first page of this Order. **

4

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2025, a true and correct copy of the foregoing

**[PROPOSED] JUDGMENT** was served via electronic mail to the following:

> Brady Brammer
> Scott Dansie
> BRAMMER RANCK, LLP
> 3300 Triumph Blvd., Suite 100
> Lehi, Utah 84043
> Bbrammer@brfirm.com

/s/ Brandy Sears

6

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2025, I electronically filed the foregoing proposed

**[PROPOSED] JUDGMENT** with the Clerk of the court using the Utah Trial Court/ECF system

which sent notification of such filing to parties of record, including:

> Brady Brammer
> Scott Dansie
> BRAMMER RANCK, LLP
> 3300 Triumph Blvd., Suite 100
> Lehi, Utah 84043
> Bbrammer@brfirm.com

/s/ Brandy Sears

1694766