Michael R. Johnson, Esq. (A7070)
David H. Leigh (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: dleigh@rqn.com

*Attorney for Keystone Private Income Fund*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**HALL LABS, INC.,**<br><br>Debtor-in-Possession. | **Bankruptcy No. 25-21038**<br><br>Chapter 11<br><br>Honorable Joel T. Marker |

## MOTION FOR COMFORT ORDER THAT THE AUTOMATIC STAY DOES NOT APPLY TO VANDERHALL STOCK OWNED BY THE DAVID R. HALL TRUST AND PLEDGED AS COLLATERAL TO KEYSTONE

Keystone Private Income Fund ("**Keystone**"), through counsel, respectfully requests a comfort order from this Court clarifying that the automatic stay does not preclude enforcement by Keystone of its lien and other rights against stock in Vanderhall Motor Works, Inc. (the "**Vanderhall Stock**") owned by the David R. Hall Trust (the "**Hall Trust**"), which Vanderhall Stock was pledged to Keystone to secure (in part) the Debtor's loan.

The automatic stay simply does not apply in this case to preclude Keystone from enforcing its lien and other rights against the Vanderhall Stock for the simple reason that the Hall

Trust, not the Debtor, owns the stock.   Because a non-debtor pledged the Vanderhall Stock to Keystone, the automatic stay has no application to any attempt by Keystone to exercise its non-bankruptcy rights and remedies against the Vanderhall Stock, including through state-authorized foreclosure procedures.

## RELEVANT FACTS

1.      Keystone and the Debtor entered into a loan agreement on August 11, 2021 (amended on January 12, 2022, February 11, 2023, and January 25, 2024, respectively).  [*See* Proof of Claim 2, filed March 10, 2025]

2.      As security for the obligations owed by the Debtor under the loan agreement, the Debtor granted a lien on essentially all of its assets pursuant to a written Security Agreement dated August 11, 2021.  [*Id.*]

3.      Keystone perfected its lien against the Debtor's assets pursuant to a UCC Financing Statement filed with the Utah Division of Corporations and Commercial Code on August 11, 2021, Filing Number 210811796492-8.  [*Id.*]

4.      As additional security for all obligations owed by the Debtor to Keystone under the loan agreement, the Hall Trust—a third-party non-debtor—executed and delivered to Keystone a Pledge Agreement dated February 11, 2023.  [*See* Exhibit "A"]

5.      Pursuant to the Pledge Agreement, the Hall Trust assigned and pledged to Keystone 3,699,501 shares of common stock of Vanderhall Motor Works, Inc., a Delaware Corporation.  [*Id.,* Schedule A]

6.     After the Debtor defaulted on the loan from Keystone, Keystone sued to enforce the loan in Utah state court, naming the Debtor, the trustee of the Hall Trust, and two other companies as defendants.  [*See* Claim 2, filed March 10, 2025]

7.      On February 7, 2025, the Utah court issued an over-$14 million judgment against the defendants.  [*See* State Court Judgment, attached as Exhibit "B"]

8.     The judgment provides, among other things, that Keystone can "proceed to obtain all pledged collateral," including the Vanderhall Stock pledged by the Hall Trust. [*Id.*, at 2]

9.     On March 5, 2025 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with this Court.

10.     Shortly after filing this case, Keystone's counsel emailed the Debtor's counsel about the Vanderhall Stock, and asked the Debtor's counsel to confirm that Keystone was not precluded from the automatic stay from exercising its non-bankruptcy rights and remedies against the Vanderhall Stock because the Vanderhall Stock is not property of the estate.

11.     Counsel for the Debtor would not provide the written confirmation requested, thus requiring Keystone to file the present motion.

12.     As of the Petition Date, Keystone's claim against the Debtor totaled $15,775,089.58, and its claim is secured by (a) the Vanderhall Stock owned by the Hall Trust, and (b) all or substantially all of the Debtor's assets, including the Debtor's separate shares in Vanderhall Motor Works, Inc.  [*See* Claim 2, filed March 10, 2024]

**ARGUMENT**

I.  <u>The Court has Authority Under Section 105 of the Bankruptcy Code to Issue a
    Comfort Order that the Automatic Stay does not Apply to Certain Property and
    Certain Claim Enforcement Actions</u>.

By this Motion, Keystone is requesting a comfort order regarding the Vanderhall Stock
and Keystone's ability to pursue its rights and remedies against the stock.  Courts traditionally
have exercised broad discretion in determining whether to enter comfort orders when requested
by creditors to do so.  The power to issue comfort orders is encompassed within Section 105 of
the Bankruptcy Code, which supplies bankruptcy courts with the authority to "issue any order,
process, or judgment that is necessary or appropriate to carry out the provisions of" the
Bankruptcy Code. 11 U.S.C. § 105(a); *Marrama v. Citizens Bank of Massachusetts,* 549 U.S.
365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (recognizing broad authority granted to bankruptcy
judges to take necessary or appropriate action).

"Comfort orders serve a valuable purpose. The orders, entered primarily for a third
party's benefit, often help a state court attempting to determine whether it can proceed with a
pending action. The orders merely identify and reiterate what has already occurred by operation
of law." *In re FDV Artfolio LLC*, 2019 WL 2246713, at *2 (W.D. Okla. May 23, 2019).
Comfort orders also protect creditors "from the potential ramifications of acting in violation of
the automatic stay by obtaining a cloak of cover from the court." *In re Ermi*, 2006 WL 2457144
at *2 (Bankr. N.D. Ohio 2006); *see also In re Thomas*, 469 B.R. 915, 921 (10th Cir. BAP
2012) ("The relief granted pursuant to this provision is often called a 'comfort order,' as it is
typically needed by claimants to satisfy state courts that the underlying dispute may proceed
despite pendency of a bankruptcy case.").

II. The Court Should Issue a Comfort Order Holding that the Automatic Stay does not
Apply to the Vanderhall Stock Owned by the Hall Trust, or any Attempt by Keystone
to Exercise its Legal Rights Against the Vanderhall Stock.

A bankruptcy petition triggers the automatic stay. *See* 11 U.S.C. § 362(a). "Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor.'" *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 519 (3d Cir. 1997). Accordingly, "the rule followed [in] this circuit and the general rule in other circuits is that the stay provision does not extend to solvent codefendants of the debtor." *Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994).

"As a consequence, it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor." *McCartney*, 106 F.3d at 509–10 (cleaned up). "All such obligations arise from a document by which a party agrees to answer for the debt of another," rendering them "separate and independent from the primary debtor's obligation." *See In re Advanced Ribbons & Off. Prods., Inc.*, 125 B.R. 259, 264 (B.A.P. 9th Cir. 1991). And maintaining that distinction for purposes of the automatic stay ensures that creditors retain "the protection they sought and received" by involving third parties in a transaction.[1] *McCartney*, 106 F.3d at 510.

---

[1] The distinction is also required as a matter of statutory interpretation. As the Ninth Circuit B.A.P. reasoned, the co-debtor stay provisions in Chapter 12 and 13 cases become superfluous if § 362(a) already applies to third-party property pledged to secure the debtor's obligations. *See In re Advanced Ribbons & Off. Prods., Inc.*, 125 B.R. 259, 265 (B.A.P. 9th Cir. 1991) (discussing 11 U.S.C. §§ 1201, 1301, which extend the automatic stay over acts "to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, *or that secured such debt*"); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." (cleaned up, citation omitted)).

Consider *In re Advanced Ribbons & Office Products, Inc.*, 125 B.R. 259. There, the sole shareholder of a debtor company pledged his shares as additional security for the company's obligations under several promissory notes. *See id.* at 260–61. The company defaulted and filed for bankruptcy, and the creditors foreclosed on the pledged shares. *See id.* at 261–62. On appeal, the company argued that the stock sale violated the automatic stay and was void, and that the bankruptcy court erred in declining to set it aside. *See id.* at 262. But the B.A.P. affirmed, reasoning that the automatic stay "does not protect non-debtor parties or their property," even when the "non-debtor part[y] [is] liable on the debts of the debtor." *Id.* at 263.

The B.A.P. also rejected the company's attempt to distinguish its fact pattern on the basis that "unlike [in] guaranty and surety cases, the sole obligation in this case was that of the debtor"—in the sense that the shareholder "had no personal liability" for the company's default. *Id.* at 264. In other words, the company argued that because it was the only party obligated on the debt, the foreclosure on the shareholder's stock, pledged to secure that debt, was an act to collect the debtor company's debt in violation of the stay.  The B.A.P. disagreed, explaining that "[t]he foreclosure sale was an act to collect a claim against [the shareholder's] property—his stock in the debtor—just as an action against a guarantor is an act to collect a claim against the guarantor." *Id.* The "only possible" distinction between the shareholder's scenario and that of a guarantor or surety was that his "obligation [was] limited to the value of the property he pledged as collateral." *Id.* at 264–65. And that distinction makes no difference for purposes of the automatic stay. *See id.*

Just like in *Advanced Ribbons*, the Vanderhall Stock here was pledged by a non-debtor to partially secure the Debtor's obligations to Keystone.  Because the Vanderhall Stock does not

constitute property of the bankruptcy estate, the automatic stay does not apply to preclude Keystone from exercising its rights and remedies, including through state-law foreclosure mechanisms, to foreclose upon and liquidate its lien interest in the Vanderhall Stock.  This is so even though the Hall Trust is not personally obligated to Keystone and, instead, its obligation is a non-recourse obligation.

This is also not a situation where the Debtor is functionally the same as the third party. *See Blodgett*, 24 F.3d at 141 ("A narrow exception allows a stay to be imposed under section 362(a)(1) against a nonbankrupt party . . . when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant . . . ."). For instance, as far as Keystone is aware, the Hall Trust is not "entitled to absolute indemnity by the [D]ebtor on account of any judgment that might result against them." *Hart v. Connected Wireless, Inc.*, No. 2:17-CV-186 TS, 2019 WL 861341, at *1 (D. Utah Feb. 22, 2019) (cleaned up). Rather, Keystone's claim to the Vanderhall Stock is "separate and independent" from its claims to the Debtor's assets.[2] *Blodgett*, 24 F.3d at 142; *see Advanced*, 125 B.R. at 264 (observing that the third-party pledger's obligations to the creditors was "separate and independent from the primary debtor's obligations"). Therefore, the "narrow exception" to the ordinary rule doesn't apply.

In sum, the Vanderhall Stock that the Hall Trust pledged to Keystone is not property of the estate.  And because it is not property of the estate, the Court should enter a comfort order

---

[2] Even if this were an "unusual situation[]" where the "narrow exception" might apply, it is the Debtor's burden to establish that "such [shared] identity" exists and that the court should, as a matter of equity, enter an injunction extending the effect of the automatic stay. *Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) (cleaned up); *see In re Chugach Forest Prods., Inc.*, 23 F.3d 241, 247 n.6 (9th Cir. 1994) ("[S]uch extensions . . . [are] in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual

providing that the automatic stay does not and will not apply to any attempt by Keystone to exercise its rights and remedies against the Vanderhall Stock pursuant to applicable non-bankruptcy law.

## CONCLUSION

Based upon the foregoing, Keystone respectfully requests a comfort order from this Court, in the form attached hereto as Exhibit "C," finding and declaring as follows: (a) the Vanderhall Stock that the Hall Trust pledged to partially secure the Debtor's loan from Keystone is not property of the Debtor or the Debtor's bankruptcy estate, and (b) as a result, the automatic stay does not apply to the Vanderhall Stock or to any attempt by Keystone to exercise its rights and remedies against the Vanderhall Stock, including through the use of any state-law foreclosure or judgment execution proceedings.

DATED this 19th day of March, 2025.

RAY QUINNEY & NEBEKER P.C.


*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorney for Keystone Private Income Fund*

---

need to take this action to protect the administration of the bankruptcy estate." (quoting *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993))).

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2025, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in this case.

_/s/ Annette Sanchez_

1701398

# **EXHIBIT A**

DocuSign Envelope ID: EE305554-44B6-4E1B-A546-2CC7368356B2

## PLEDGE AGREEMENT

This Pledge Agreement (this "**Agreement**") is made and entered into effective as of February 11, 2023, by and among, the David R. Hall Trust ("**Grantor**") in favor of Keystone National Group, LLC, a Delaware limited liability company as administrative and collateral agent ("**Agent**") for the benefit of Lenders.

## RECITALS

A.    Hall Labs, LLC, a Utah limited liability company ("**Borrower**"), Agent and Lenders are parties to that certain Loan Agreement, entered into as of August 11, 2021, as subsequently amended on January 12, 2022 and again effective as of February 11, 2023 (the "**Loan Agreement**"), pursuant to which Borrower has requested that Lenders invest in credit to Borrower pursuant to the terms, conditions and obligations set forth therein.

B.    In order to induce Lenders to continue to invest in the credit pursuant to the Loan Agreement, Grantor has agreed to enter into this Pledge Agreement and to pledge and grant to Lenders the security interest in the Collateral described below.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises, covenants, representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby covenant and agree as follows:

1.    **Definitions and Interpretation**.  Unless otherwise defined herein, all capitalized terms used herein and defined in the Loan Agreement shall have the respective meanings given to those terms in the Loan Agreement.  All terms defined in the Utah Uniform Commercial Code (the "**UCC**") shall have the respective meanings given to those terms in the UCC.

2.    **The Pledge**.  To secure the Obligations, Grantor hereby pledges and assigns to Agent for the benefit and on behalf of Lenders, and grants to Lenders a security interest in, all of Grantor's right, title and interest, whether now existing or hereafter arising in all instruments, certificated and uncertificated securities, money and general intangibles of, relating to or arising from the following property (the "**Pledged Collateral**"):

(a)    All of the shares, stock, securities and other equity interests more particularly described on **Schedule A** hereto (the "**Pledged Securities**");

(b)    All dividends (including cash dividends), other distributions (including redemption proceeds), or other property, securities or instruments in respect of or in exchange for the Pledged Securities, whether by way of dividends, stock dividends, recapitalizations, mergers, consolidations, split-ups, combinations or exchanges of shares or otherwise; and

(c)    All proceeds of the foregoing ("**Proceeds**").

3.    **Security for Obligations**.  The obligations secured by this Agreement shall mean and include all loans, advances, debts, liabilities and obligations, howsoever arising, owed by Borrower to Agent or Lenders of every kind and description (whether or not evidenced by any note or instrument and whether or not for the payment of money), now existing or hereafter arising under or pursuant to the terms of the Loan Agreement, any Note or any other instrument or agreement, including, all interest, fees, charges,

DocuSign Envelope ID: EE305554-44B6-4E1B-A546-2CC7368356B2

expenses, attorneys' fees and costs and accountants' fees and costs chargeable to and payable by Borrower hereunder and thereunder, in each case, whether direct or indirect, absolute or contingent, due or to become due, and whether or not arising after the commencement of a proceeding under Title 11 of the United States Code (11 U.S.C. Section 101 *et seq.*), as amended from time to time (including post-petition interest) and whether or not allowed or allowable as a claim in any such proceeding.

4. **Delivery of Pledged Collateral; Financing Statements**. All certificates or instruments representing or evidencing the Pledged Collateral shall be promptly delivered to Agent and shall be in suitable form for transfer by delivery, or shall be accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to Agent.

5. **Representations and Warranties**. Grantor hereby represents and warrants as follows:

(a) the execution, delivery and performance by Grantor of this Agreement and all of the other transaction documents to which Grantor is a party have been duly authorized by all necessary action of Grantor and that Grantor has the right to pledge and grant Lenders the security interest in the Pledged Collateral granted under this Agreement;

(b) all information heretofore, herein or hereafter supplied to Agent and Lenders by or on behalf of Grantor with respect to the Pledged Collateral is true and correct;

(c) this Agreement and each of the transaction documents executed by Grantor has been duly executed and delivered by Grantor and constitutes a legal, valid and binding obligation of Grantor, enforceable against Grantor in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity;

(d) Grantor is the sole record and beneficial owner of the Pledged Collateral and that no other person or entity has any right, title, claim or interest (by way of lien, encumbrance, security interest or otherwise) in, against or to the Pledged Collateral; and

(e) this Agreement creates a legal, valid and binding security interest in favor of Lenders in the Pledged Collateral to secure the indebtedness, liabilities and other obligations under the Loan Agreement, including interest and upon the filing of UCC-1 financing statements in the appropriate filing offices, Lenders have a continuing first priority perfected security interest in the Pledged Collateral to the extent that a security interest in the Pldeged Collateral can be perfected.

6. **Covenants Relating to Collateral**. In addition to those covenants, promises and obligations set forth elsewhere in the transaction documents, Grantor hereby agrees, promises and covenants:

(a) to maintain good and marketable title to all Pledged Collateral free and clear of all liens, encumbrances and security interests and to perform all acts that may be necessary to maintain, preserve, protect and perfect the Pledged Collateral, the lien granted to Lenders herein and the perfection and priority of such lien;

(b) to defend all of Agent and Lenders' right, title and security interest in and to the Pledged Collateral against the claims of any person or entity;

(c) to promptly notify Agent and Lenders of any claim, action or proceeding affecting the Pledged Collateral, or any part thereof, or the security interest created hereunder and, at Grantor's

2

DocuSign Envelope ID: EE305554-44B6-4E1B-A546-2CC7368356B2

expense, defend Lenders' security interest in the Pledged Collateral against the claims of any person or entity;

(d)    to procure, execute and deliver from time to time any endorsements, assignments, certificates, statements and other writings reasonably deemed necessary or appropriate by Agent and Lenders to perfect, maintain and protect its lien hereunder and the priority thereof and to deliver to, promptly upon the request of, Agent or Lenders all originals evidencing the Pledged Collateral;

(e)    to appear in and defend any action or proceeding which may affect its title to or Lenders' interest in the Pledged Collateral;

(f)    to keep separate, accurate and complete records of the Pledged Collateral and to provide Agent with such records and such other reports and information relating to the Pledged Collateral as Agent may reasonably request from time to time;

(g)    without the prior written consent of Agent, not to surrender or lose possession of (other than to Lenders), sell, encumber, lease, rent, or otherwise dispose of or transfer any Pledged Collateral or right or interest therein, and to keep the Pledged Collateral free of all liens; and

(h)    to permit Agent and its' representatives the right, at any time during normal business hours, upon reasonable prior notice, to visit and inspect the properties of Grantor and its corporate, financial and operating records, and make abstracts therefrom, and to discuss Grantor's affairs, finances and accounts with its managers, officers and independent accountants.

7.    **Further Assurances**.  Grantor agrees that at any time and from time to time, at Grantor's sole expense, Grantor will promptly execute and deliver all further instruments and documents, including without limitation all additional Pledged Securities, and take all further action, that may be necessary or desirable, or that Agent may reasonably request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Agent or Lenders to exercise and enforce their rights and remedies hereunder with respect to any Pledged Collateral.

8.    **Voting Rights; Dividends.**

(a)    *Rights Prior to an Event of Default*.  So long as no Event of Default shall have occurred and be continuing:

(i)    Grantor shall be entitled to exercise any and all voting, ownership and other rights pertaining to the Pledged Securities or any part thereof for any purpose not inconsistent with the terms of this Agreement.

(ii)    Grantor shall be entitled to receive and retain free and clear of the security interest of Lenders hereunder any and all distributions, dividends and interest paid in respect of the Pledged Securities; *provided, however*, that any and all (A) distributions, dividends and interest paid or payable other than in cash in respect of, and instruments and other property received, receivable or otherwise distributed in respect of, or in exchange for any Pledged Securities, (B) dividends and other distributions paid or payable in cash in respect of any Pledged Securities in connection with a partial or total liquidation or dissolution or in connection with a reduction of capital, capital surplus or paid-in-surplus, and (C) cash paid, payable or otherwise distributed in respect of principal of, or in redemption of, or in exchange for, any Pledged Securities, shall be, and shall be forthwith delivered to Agent to hold as, Pledged Collateral and shall, if received by Grantor, be received in trust for the benefit of Lenders, be segregated from the

3

DocuSign Envelope ID: EE305554-44B6-4E1B-A546-2CC7368356B2

other property or funds of Grantor and be forthwith delivered to Agent as Pledged Collateral in the same form as so received (with any necessary endorsement) to be held as part of the Pledged Collateral.

(b)   ***Rights Following an Event of Default.***  Upon the occurrence and during the continuance of an Event of Default:

(i)   All rights of Grantor to exercise the voting, ownership and other rights which it would otherwise be entitled to exercise pursuant to Section 8(a)(i) hereof and to receive the dividends, distribution and interest payments which it would otherwise be authorized to receive and retain pursuant to Section 8(a)(ii) hereof shall cease and all such rights shall thereupon become vested in Lenders which shall thereupon have the sole right, but not the obligation, to exercise such voting, ownership and other rights and to receive and hold as Pledged Collateral such distributions, dividends and interest payments.

(ii)   All distributions, dividends and interest payments which are received by Grantor contrary to the provisions of Section 8(b)(ii) hereof shall be received in trust for the benefit of Lenders, shall be segregated from other funds of Grantor and shall be forthwith delivered to Agent as Pledged Collateral in the same form as so received (with any necessary endorsement).

9.   __Events of Default; Remedies__.

(a)   ***Event of Default.***  An Event of Default shall be deemed to have occurred under this Agreement upon the occurrence and during the continuance of an Event of Default under the Loan Agreement.

(b)   ***UCC.***  In addition to all other rights granted hereby, and otherwise by law, Agent and Lenders shall have, with respect to the Pledged Collateral, the rights and obligations of a secured party under the UCC.

(c)   ***Sale of Pledged Collateral.***  Grantor hereby acknowledges and recognizes that Agent and Lenders may be unable to effect a public sale of all or a part of the Pledged Securities and may be compelled to resort to one or more private sales to a restricted group of purchasers who will be obligated to agree, among other things, to acquire the Pledged Securities for their own account, for investment and not with a view to the distribution or resale thereof. Grantor acknowledges that any such private sales may be at prices and on terms less favorable to Agent and Lenders than those of public sales, and agrees that so long as such sales are made in good faith such private sales shall be deemed to have been made in a commercially reasonable manner and that Agent and Lenders have no obligation to delay sale of any Pledged Securities to permit the issuer thereof to register it for public sale under the Securities Act of 1933, as amended or under any state securities law.

(d)   ***Notice.***  In any case where notice of sale is required, ten (10) calendar days' notice shall be deemed reasonable notice. Agent and Lender may have resort to the Pledged Collateral or any portion thereof with no requirement on the part of Agent or Lender to proceed first against any other Person or property.

(e)   ***Other Remedies.***  Upon the occurrence and during the continuance of an Event of Default, (i) at the request of Agent, Grantor shall assemble and make available to Agent all records relating to the Pledged Securities at any place or places specified by Agent, together with such other information as Secured Party shall request concerning Grantor's ownership of the Pledged Securities and relationship to Borrower; and (ii) Agent or its nominee shall have the right, but shall not be obligated, to vote or give consent with respect to the Pledged Securities or any part thereof.

DocuSign Envelope ID: EE305554-44B6-4E1B-A546-2CC7368356B2

10.    **Attorney-in-Fact.**

(a)    *Appointment.*  Grantor hereby appoints Agent as Grantor's attorney-in-fact, with full authority in the place and stead of Grantor and in the name of Grantor or otherwise, from time to time in Agent's discretion and to the full extent permitted by law to take any action and to execute any instrument which Agent may deem reasonably necessary or advisable to accomplish the purposes of this Agreement in accordance with the terms and provisions hereof, including without limitation, to receive, endorse and collect all instruments made payable to Grantor representing any dividend, interest payment or other distribution in respect of the Pledged Collateral or any part thereof and to give full discharge for the same.

(b)    *Power of Attorney.*  Grantor hereby ratifies all reasonable actions that said attorney shall lawfully do or cause to be done by virtue hereof.  This power of attorney is a power coupled with an interest and shall be irrevocable.  The powers conferred on Agent hereunder are solely to protect its interests in the Pledged Collateral and shall not impose any duty upon Agent to exercise any such powers.  Agent shall be accountable only for amounts that it actually receives as a result of the exercise of such powers and in no event shall Agent or any of its officers, directors, employees or agents be responsible to Grantor for any act or failure to act, except for gross negligence or willful misconduct.

(c)    *Authorized Actions.*  Without limiting the foregoing, Agent shall be empowered, authorized and permitted to take any action which Grantor is obligated by this Agreement to perform, and to exercise any such rights and powers as Grantor might exercise with respect to the Pledged Collateral, including the right to (a) collect by legal proceedings or otherwise and endorse, receive and receipt for all dividends, interest, payments, proceeds and other sums and property now or hereafter payable on or on account of the Pledged Collateral; (b) enter into any reorganization, consolidation or other agreement pertaining to, or deposit, surrender, accept, hold or apply other property in exchange for the Pledged Collateral; (c) make any compromise or settlement, and take any action it deems advisable, with respect to the Pledged Collateral; (d) insure, process and preserve the Pledged Collateral; and (e) file UCC financing statements and execute other documents, instruments and agreements required hereunder.  Grantor agrees to reimburse Agent and Lenders upon demand for any costs and expenses, including attorneys' fees, Agent may incur while acting as Grantor's attorney-in-fact hereunder, all of which costs and expenses are included in the obligations set forth in the Loan Agreement.

11.    **Miscellaneous.**

(a)    *Notices.*  Except as otherwise provided herein, all notices, requests, demands, consents, instructions or other communications to or upon Agent, Lenders or Grantor under this Agreement shall be in writing and telecopied, mailed or delivered to each party at the address or telecopier number last given to the other party.  All such notices and communications shall be effective (a) when sent by Federal Express or other overnight service of recognized standing, on the business day following the deposit with such service; (b) when mailed by registered or certified mail, first class postage prepaid and addressed as aforesaid through the United States Postal Service, upon receipt; (c) when delivered by hand, upon delivery; and (d) when telecopied, upon confirmation of receipt.

(b)    *Nonwaiver.*  No failure or delay on Agent or Lender's part in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

(c)    *Amendments and Waivers.*  This Agreement may not be amended or modified, nor may any of its terms be waived, except by written instruments signed by Agent, Lenders and Grantor.  Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

DocuSign Envelope ID: EE305554-44B6-4E1B-A546-2CC7368356B2

(d)      *Assignments*.  This Agreement shall be binding upon and inure to the benefit of Agent, Lenders and Grantor and their respective successors and assigns; *provided, however*, that Grantor may not assign its rights, obligations and duties hereunder without the prior written consent of Agent.

(e)      *Cumulative Rights*.  The rights, powers and remedies of Agent and Lenders under this Agreement shall be in addition to all rights, powers and remedies given to Agent or Lenders by virtue of any applicable law, rule or regulation of any governmental authority, each Note, Loan Document or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Agent and Lenders' rights hereunder.  Grantor waives any right to require Agent or any Lender to proceed against any Person or to exhaust any collateral or to pursue any remedy in Agent or any Lender's power.

(f)      *Payments Free of Taxes*.  All payments made by Grantor under this Agreement shall be made by Grantor free and clear of and without deduction for any and all present and future taxes, levies, charges, deductions and withholdings.  In addition, Grantor shall pay upon demand any stamp or other taxes, levies or charges of any jurisdiction with respect to the execution, delivery, registration, performance and enforcement of this Agreement.  Upon request by Agent, Grantor shall furnish evidence satisfactory to Agent that all requisite authorizations and approvals by, and notices to and filings with, governmental authorities and regulatory bodies have been obtained and made and that all requisite taxes, levies and charges have been paid.

(g)      *Partial Invalidity*.  If any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law or any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Agreement nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(h)      *Expenses*.  Each of Agent, Lenders and Grantor shall bear their own costs in connection with the preparation, execution and delivery of, and the exercise of its duties under, this Agreement.  Grantor shall pay on demand all fees and expenses, including attorneys' fees and expenses, incurred by Agent or any Lender with respect to any amendments or waivers hereof requested by Grantor or in the enforcement or attempted enforcement of any of the Obligations or in preserving any of Agent or Lenders' rights and remedies (including, without limitation, all such fees and expenses incurred in connection with any "workout" or restructuring affecting this Agreement, any Note or the Obligations or any bankruptcy or similar proceeding involving Grantor).

(i)      *Governing Law*.  This Agreement shall be governed by and construed in accordance with the laws of the State of Utah without reference to conflicts of law rules (except to the extent governed by the UCC).

(j)      *Jury Trial*.  EACH OF AGENT AND GRANTOR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

*(Signature Pages Follow)*

DocuSign Envelope ID: EE305554-44B6-4E1B-A546-2CC7368356B2

IN WITNESS WHEREOF, the parties have caused this Pledge Agreement to be executed by a duly authorized officer as of the date first written above.

**GRANTOR:**                                            **AGENT:**

**DAVID R. HALL TRUST**                    **KEYSTONE NATIONAL GROUP, LLC**
                                                              a Delaware limited liability company

By: _Carl Belliston_                                  By: _Brad Allen_
     45A38036897448D                                        30D0DDE2698D40A

Name: _Carl Belliston_                          Name: _Brad Allen_

Title: _Trustee_                                      Title: _Chief Financial Officer_

# **<u>EXHIBIT B</u>**

The Order of the Court is stated below:
Dated: February 07, 2025      /s/  ROBERT FAUST
          09:47:51 AM                      District Court Judge

Gregory S. Roberts (9092)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
    Telephone:  (801) 532-1500
    Facsimile:  (801) 532-7543
    mailto:groberts@rqn.com

*Attorneys for Plaintiffs*

<table>
<tr><td colspan="2" align="center">IN THE THIRD JUDICIAL DISTRICT COURT<br><br>SALT LAKE COUNTY, STATE OF UTAH</td></tr>
<tr><td>KEYSTONE PRIVATE INCOME FUND, a Delaware statutory trust, and KEYSTONE NATIONAL GROUP, LLC, a Delaware limited liability company, as administrative and collateral agent,<br><br>        Plaintiffs,<br><br>    v.<br><br>HALL LABS, LLC, a Utah limited liability company, and CARL BELLISTON, TRUSTEE OF THE DAVID HALL TRUST,<br><br>        Defendants.</td><td align="center">**JUDGMENT**<br><br>Case No. 240907334<br><br>Judge Robert Faust</td></tr>
</table>

1

Based upon the Ruling dated December 31, 2024 entered by the Court, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs Keystone Private Income Fund, a Delaware statutory trust (**KPIF**"), and Keystone National Group, LLC, a Delaware limited liability company ("**KNG**"), as administrative and collateral agent, (KPIF and KNG are referred to herein collectively as "**Keystone**") have judgment against Defendant Hall Labs LLC, a Utah limited liability company ("**Hall Labs**") for the principal sum of $13,800,000.00, together with accrued and unpaid interest as of August 30, 2024 in the amount of $627,899.98, together with interest accruing from and after August 30, 2024 at the contractual default rate of eighteen percent (18%) per annum, both before and after judgment.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs Keystone have judgment against Defendants, jointly and severally, for attorneys fees and costs incurred by Plaintiff as the entry of judgment in the amount of $14,652.60.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs can proceed to obtain all pledged collateral, including, all instruments, certificated and uncertificated securities, money and general intangibles of, relating to or arising from 3,699,501 shares of common stock of Vanderhall Motor Works, Inc., a Delaware corporation, together with all dividends (including cash dividends), other distributions (including redemption proceeds), or other property, securities or instruments.  Further, Plaintiff shall use the appropriate Writs issued to the constable or Sheriff of Salt Lake County, or such other appropriate county (or such other

2

appropriate officer of the Court) to seize and sell the Hall Trust Collateral according to the laws and practices of this Court, to satisfy the amounts which are found herein due and owing by Defendant Hall Labs LLC and that the proceeds of such sale be applied first to the costs of foreclosure, including attorneys fees, and then to the indebtedness and obligations of Defendant Hall Labs LLC herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' lien and security interest is the first and prior lien on all tangible and intangible assets of Defendant Hall Labs LLC, now owned or hereafter acquired, including but not limited to all loans, payment obligations, properties, assets, receivables, accounts, instruments, goods, equipment, contract rights, agreements, security interests, deeds of trust, general intangibles, claims, guarantees, securities, documents, cash, deposit accounts, supporting documentation, instruments, chattel paper, investment property, stock or other equity interests, financial assets of Defendant Hall Labs LLC (the "**Hall Labs Collateral**") for the payment of the obligations of Defendant Hall Labs LLC under this Judgment, superior to all right, title or interest of the Defendants herein, and all other parties claiming under them, and ordering, at the request of Plaintiff, that a Writ of Replevin, and accompanying Writ of Assistance, and/or a Writ of Execution shall be issued directing the constable or Sheriff of Salt Lake County, or such other appropriate county (or such other appropriate officer of the Court) to seize and sell the Hall Labs Collateral according to the laws and practices of this Court, to satisfy the amounts which are found herein due and owing by

3

Defendant Hall Labs LLC and that the proceeds of such sale be applied first to the costs of

foreclosure, including attorneys fees, and then to the indebtedness and obligations of Defendant

Hall Labs LLC herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs are entitled

to issuance of a writ of replevin (i) enjoining Defendants from using the Hall Trust Collateral and

the Hall Labs Collateral (collectively, the "**Collateral**"); (ii) directing Defendants to deliver, or

cause to be delivered, the Collateral to Plaintiffs, (iii) directing that the Collateral be immediately

and permanently seized and taken from the possession of Defendants; (iv) requiring Defendants

to assemble and make available to Plaintiffs all records relating to the Hall Trust Collateral at any

place or places specified by Plaintiffs, and (v) ordering that all voting, ownership and other rights

are vested in Plaintiff KPIF and directing that all dividends, distributions and interest payments

related to the Hall Trust Collateral be delivered to Plaintiff KPIF

IT IS FURTHER ORDERED THAT THIS JUDGMENT MAY BE AUGMENTED IN

THE AMOUNT OF REASONABLE COSTS AND ATTORNEYS FEES EXPENDED IN

COLLECTING SAID JUDGMENT BY EXECUTION OR OTHERWISE AS SHALL BE

ESTABLISHED BY AFFIDAVIT.

IT IS SO ORDERED.

** In accordance with the Utah State District Courts E-filing Standard No. 4, and
URCP Rule 10(e), this Order does not bear the handwritten signature of
the Judge, but instead displays an electronic signature at the upper
right-hand corner of the first page of this Order. **

4

5

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2025, a true and correct copy of the foregoing

**[PROPOSED] JUDGMENT** was served via electronic mail to the following:

> Brady Brammer
> Scott Dansie
> BRAMMER RANCK, LLP
> 3300 Triumph Blvd., Suite 100
> Lehi, Utah 84043
> Bbrammer@brfirm.com

/s/ Brandy Sears

6

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2025, I electronically filed the foregoing proposed

**[PROPOSED] JUDGMENT** with the Clerk of the court using the Utah Trial Court/ECF system

which sent notification of such filing to parties of record, including:

> Brady Brammer
> Scott Dansie
> BRAMMER RANCK, LLP
> 3300 Triumph Blvd., Suite 100
> Lehi, Utah 84043
> Bbrammer@brfirm.com

> /s/ Brandy Sears

1694766

7

**<u>EXHIBIT C</u>**

*Prepared and Submitted by:*

Michael R. Johnson, Esq. (A7070)
David H. Leigh (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah  84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email: dleigh@rqn.com

*Attorney for Keystone Private Income Fund*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**HALL LABS, INC.,**<br><br>Debtor-in-Possession. | **Bankruptcy No. 25-21038**<br><br>Chapter 11<br><br>Honorable Joel T. Marker |

## [PROPOSED] ORDER DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY TO VANDERHALL STOCK OWNED BY THE DAVID R. HALL TRUST AND PLEDGED AS COLLATERAL TO KEYSTONE PRIVATE INCOME FUND

This matter is before the Court on the *Motion for Comfort Ordre that the Automatic Stay does not Apply to Vanderhall Stock owned by the David R. Hall Trust and Pledged as Collateral to Keystone* (the "**Motion**") filed by Keystone Private Income Fund ("**Keystone**). In the Motion, Keystone requests an Order from this Court finding and determining that (a) 3,699,501 shares of

common stock of Vanderhall Motor Works, Inc. (the "**Vanderhall Stock**") that was pledged by

the David R. Hall Trust to partially secure a loan from Keystone to the Debtor is not property of

the Debtor or the Debtor's estate, and (b) because the Vanderhall Stock is not property of the

Debtor or the Debtor's estate, the automatic stay does not preclude Keystone from exercising

whatever rights and remedies it may have concerning the Vanderhall Stock pursuant to

applicable non-bankruptcy law.

The Court, after considering the Motion, all objections or responses that were filed

concerning the Motion, and such other and further matters in the Court's files as the Court

deemed appropriate, has determined that the Motion is well-taken, and that the relief requested

therein should be granted.

Accordingly, based on the foregoing, and good cause appearing therefore, **IT IS**

**HEREBY ORDERED** as follows:

1.      The Vanderhall Stock identified herein is owned by the David R. Hall Trust not

the Debtor and, as such, does not constitute property of the Debtor or the Debtor's estate.

2.      Because the Vanderhall Stock is not property of the Debtor or the Debtor's estate,

the automatic stay of 11 U.S.C. § 362(a) does not apply to the Vanderhall Stock or to any effort

or attempt by Keystone to exercise its rights and remedies concerning the Vanderhall Stock

pursuant to applicable non-bankruptcy law.

----------------------------------------END OF DOCUMENT--------------------------------------

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on _____, 2025, the foregoing Order was filed with the

Clerk of the Court using the CM/ECF system, which sent notice of electronic filing to all

electronic filing users in this case.

*/s/ Annette Sanchez* _____

1702389