Jason R. Naess (ISBN 8407)
Assistant United States Trustee, Region 18
Matthew J. Burne (USB #18605)
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
Telephone: (801) 524-5734
E-mail: Matthew.Burne@usdoj.gov

Attorneys for Gregory M. Garvin
Acting United States Trustee, Region 19

---

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 25-21038 |
| HALL LABS, LLC, | Chapter 11 |
| Debtor. | Hon. Joel T. Marker |

---

## UNITED STATES TRUSTEE'S RESPONSE TO MOTION TO CONVERT, OR ALTERNATIVELY, FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE FILED BY KEYSTONE PRIVATE INCOME FUND AND MEMORANDUM OF POINTS AND AUTHORITIES

---

The Acting United States Trustee ("UST"), through his attorney, hereby files this Response to the Motion to Convert, or Alternatively, for Appointment of a Chapter 11 Trustee (Dkt. 56, "Motion") filed by Keystone Private Income Fund ("Keystone"). The UST does not oppose the relief sought in the Motion, and, in the event the Court were to grant the Motion, the UST believes conversion is in the best interests of the estate. This response is supported by the memorandum of points and authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      STATEMENT OF FACTS

1.      On March 5, 2025 ("Petition Date"), Hall Labs, LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq* (the "Bankruptcy Code").

2.      On the Petition Date, the Debtor filed its initial Statement of Financial Affairs ("SOFA") and Bankruptcy Schedules ("Schedules") (Dkt. 2) and on April 24, 2025, the Debtor filed Amended Schedules and an Amended SOFA (Dkt. 49).

3.      On its Amended Schedule A/B, Debtor lists the following assets:[1]

    a.  A Chase Bank Account with a balance of $129,333.33 (Amended Schedule A/B Line 3.1);

    b.  Accounts Receivable with a current value of $299,736 ("Debtor's AR") (*Id.* at Line 11).

    c.  Ownership Interests in the following entities with the following "current values":

        i.  Bacon Work, Inc. ("Bacon") – 15% - $263,854
       ii.  Nernst Electric, Inc. – 56.1% - $0.00
     iii.  Smarter Home, Inc. – 90% - $0.00
     iv.  Vanderhall Motor Works, Inc. ("VMW") - 51% - $98,218,686
      v.  Hall Property Holdings, LLC – 100% - $250,872
     vi.  DRH Holdings, LLC – 100% - $373,922
    vii.  Hall Opportunity Fund 1, LP ("HOFI")– 36.05% - $2,273,278
   viii.  Hall Labs Opportunity Funds, LLC – 99% - $0.00.
    (*Id.* at Line 15).

---

[1] The Debtor also lists intangible and intellectual property assets all with Net book values of $0.00 and with "unknown" current values. (Amended Schedule A/B, Lines 60, 61 and 64).

    d.   Two Handheld Laser Welders (the "Lasers") valued at $17,856.[2] (*Id.* at Line 50).

    e.   Nonrecourse Promissory Notes (the "Promissory Notes") in the aggregate principal amount of $6,764,235, scheduled at an "unknown" current value. (*Id.* at Line 71).

    f.   Net Operating Losses from 2023 in the amount of $24,357,061.00. (*Id.* at Line 72.)

4.    On the Debtor's Amended SOFA, it reports that in 2023 it had $10,860,828 in gross revenue, but in 2024 and 2025 (as of the Petition Date) it had less than $30,000 in gross revenue each year. (Amended SOFA Question 1).

5.    On the Amended SOFA, Debtor reports transfers outside the ordinary course of business within 2 years before the Petition Date (the Non-Ordinary Course Transfers) in the aggregate amount of $26,889,549.78 (some of these transfers are valued at $0). (*Id.* at Question 13).

6.    On the Amended SOFA, Debtor reports transfers to insiders within one year before the Petition Date (the "Insider Transfers") in the aggregate amount of $268,342.92 .(*Id.* at Question 30).

7.    The UST commenced the Debtor's § 341(a) Meeting of Creditors ("341 Meeting") on April 9, 2025, which ran for approximately 3 hours. Mr. David Hall appeared as the CEO of the Debtor and testified under oath.   A copy of a transcript of the 341 Meeting is attached as Exhibit F to the Motion.

---

[2] Based on Mr. Hall's Testimony at the 341 Meeting, the Lasers may have been sold and are no longer available Debtor's assets.

8.      During the 341 Meeting, when questioned on the nature of the transactions underlying the Promissory Notes, Mr. Hall's testimony was unclear whether the Debtor ever funded these loans or what, if any, obligation the recipients have to pay the principal amounts to the Debtor. (*See* Motion Exhibit F at 62:10–66:11).

9.      On April 15, 2025, the UST filed a Notice of Appointment of Creditors' Committee. (Dkt. 44).   As of the date of this Response, the Committee has yet to retain counsel to represent it.

10.     On April 28, 2025, the UST commenced the continued 341 Meeting, which ran for approximately 2 hours. During the continued 341 Meeting, Mr. Hall testified that, other than potential sale proceeds from its VMW stock and net proceeds from the sale of real properties held by Debtor's subsidiaries, DRH Holdings, LLC and Hall Property Holdings, the Debtor has no other sources of income.

11.     On May 12, 2025, the Debtor filed a Disclosure Statement ("Dkt. 64, "Disclosure Statement") wherein it indicates: "The Plan recognizes that the only assets that realistically can be used to satisfy creditors claims are the Vanderhall Stock, the Bacon Stock, and the HOFI Interest."). (*See* Disclosure Statement § E-2.00).   Notwithstanding the Debtor's scheduled "current value" of the VMW Stock, Bacon Stock and HOFI Interest, in the Disclosure Statement the Debtor asserts that these interests cannot be sold quickly and that if they are auctioned "inevitable result will be decimation of value for anyone other than the buyer." *Id*.

## II.   <u>**ARGUMENT**</u>

12.      Section 1112(b)(1) of the Bankruptcy Code, provides that if the movant establishes cause, the Court "shall" dismiss or convert the case to chapter 7, unless the Court determines that the appointment of a trustee or an examiner under 11 U.S.C. § 1104(a) is in the best interests of creditors and the bankruptcy estate.

13.      Section 1112(b)'s list of what constitutes cause is not exhaustive and other circumstances may constitute cause. *See Frieouf v. U.S. (In re Frieouf)*, 938 F.2d 1099, 1102 (10th Cir. 1991).

14.      The UST does not oppose the Motion as it appears cause exists to convert the Bankruptcy Case under section 1112(b) because (i) the Debtor has no operations and minimal income/assets from which to fund a rehabilitation, and continuation in Chapter 11 will only result in substantial and continuing loss to the estate; and (ii) conversion of the Bankruptcy Case (as opposed to appointing a Chapter 11 Trustee) is in the best interests of the estate and creditors.

*(i)*      *<u>Continuation in chapter 11 results in substantial or continuing loss to or diminution of the Debtor's estate without any reasonable likelihood of rehabilitation.</u>*

15.      Cause exists to convert a case under section 1112(b)(4)(A) of the Bankruptcy where there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]"

16.      The purpose of this section is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of

rehabilitation." *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) (*quoting In re Lizeric Realty Corp.,* 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995)).

17.     There are two elements to show "cause" under § 1112(b)(4)(A): (1) a showing of substantial or continuing loss to or diminution of the estate; and (2) absence of a reasonable likelihood of rehabilitation. *In re Vaughan Co., Realtors*, 2013 WL 2244285 (Bankr. D.N.M. 2013).   "This requirement is in the conjunctive and it clearly is the burden of the movant to prove both of these elements." *In re Lykes Bros. S.S. Co., Inc.*, 196 B.R. 586, 595 (Bankr. M.D. Fla. 1996).

18.     The first part of the statutory test focuses on whether a debtor has suffered or continues to suffer negative cash flow or declining asset values resulting in loss to or diminution of the estate.   In *Vaughan*, the court identified relevant factors the court should assess: "the bankruptcy estate's financial history and financial prospects and the financial records on file in the case." *Vaughan*, 2013 WL 2244285 at *6.

19.     In evaluating whether a debtor has suffered continuing losses or diminution of the estate under 11 U.S.C. § 1112(b), courts consider all relevant information, including the bankruptcy estate's financial history and financial prospects and the financial records on file in the case. *See Vaughan*, 2013 WL 2244285 at *6 (citing *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) ("the Court looks to both the financial prospects of the Debtor and the financial records filed with the Court" to determine whether there has been a continuing loss or diminution to the estate.); *see also, In re The AdBrite Corp.*, 290 B.R. 209, 215 (Bankr.

S.D.N.Y. 2003) (stating that "a court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financial statements.") (citation omitted).

20.     Cumulative losses are sufficient to show continuing loss to and diminution of the estate. *In re ARS Analytical, LLC*, 433 B.R. 848, 858 (Bankr. D.N.M. 2010); *see also In re Mense*, 509 B.R. at 515-16 (8th Cir. 2004) (A debtor's "negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate.'").

21.     In this case, as Mr. Hall testified, the Debtor has no ongoing operations and the only income will come from the sale of its remaining common stock in VMW, Bacon and its HOFI Interest (which appears to be subject to Keystone's lien) and the net proceeds from real property owned by Debtor's subsidiaries, DRH Holdings, LLC and Hall Property Holdings, LLC. However, those properties are secured by liens held by Central Bank and it is unclear whether there is any equity available after satisfaction of those liens.   Furthermore, it is unknown if DRH Holdings, or Hall Property Holdings have any obligations to transfer the net sale proceeds to the Debtor. Accordingly, it does not appear the Debtor has a viable source of income to fund a reorganization in Chapter 11.

22.     With regard to the Debtor's interests in VMW, Bacon and HOFI, it is unclear whether the Debtor's "current values" listed on the Amended Schedules are accurate, particularly because Debtor indicates in the Disclosure Statement that those interests cannot be liquidated for those "current values."   All that is presented in the Disclosure Statement is speculation that Debtor's creditors would accept these interests in exchange for their claims against the Debtor.

7

23.     The Debtor's March MOR indicates it operated at a loss of -$177,022 and diminished its cash position by -$79,961.   These losses were only curbed by Debtor's receipt of a contribution of approximately $92,000 from one of its subsidiaries. Furthermore, the MOR does not include administrative costs of running the Chapter 11 estate, such as professional fees for Debtor's counsel and Committee's counsel, in the event the Committee can even obtain representation.

24.     The income reported on Debtor's SOFA for 2023, 2024 and 2025 demonstrates the rapid decline in Debtor's gross revenue from over $10 million in 2023 to less than $30,000 per year in 2024 and 2025 (as of the Petition Date). Accordingly, based on this trend, continuation in Chapter 11 will likely lead to substantial and continuing loss to the estate, as Chapter 11 administrative expenses mount only to be offset by the minimal and speculative income stream.

25.     There is also a lack of any reasonable likelihood of rehabilitation under section 1112(b)(4)(A) of the Bankruptcy Code.

26.     Rehabilitation is more than reorganization. *ARS Analytical*, 433 B.R. 848, 863 (citing *In re Fall*, 405 B.R. 863, 867–68 (Bankr. N.D. Ohio 2008), *aff'd*, 2009 WL 974538 (N.D. Ohio 2009).   It signifies something more, such as "to put back in good condition" or "to re-establish on a firm, sound basis." *ARS Analytical*, 433 B.R. 848, 863 (citing *In re The v. Companies*, 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002)). It contemplates the successful maintenance or reestablishment of the debtor's business operations. *Id.* (citation omitted).

8

27.    Courts have held that "the issue of rehabilitation is whether the debtor's business prospects justify continuance of the reorganization effort." *In re Unique Tool & Mfg. Co., Inc.*, 2019 WL 5589085, at * 10 (citing *In re Miller*, 496 B.R.469, 479 (Bankr. E.D. Tenn. 2013)).

28.    "The issue of rehabilitation for purposes of § 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re Hassen Imps. P'ship*, 2013 Bankr. LEXIS 3870, at *42 (quoting *In re Wallace*, 2010 Bankr. LEXIS 261, 2010 WL 378351 at *4 (Bankr. D. Idaho Jan. 26, 2010)). Furthermore, a lack of income is demonstrative of the absence of a reasonable likelihood of rehabilitation. *In re Johnston*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992) ("The record shows that [the debtor] lacked the income which would indicate a reasonable likelihood of rehabilitation. Furthermore, the position of creditors was continuing to erode, and creditors were not likely to be satisfied if the case remained in a Chapter 11.").

29.    Mr. Hall's testimony during the continued 341 Meeting was that there are no ongoing operations for the Debtor. Indeed, the only things to be done in this case (as Debtor admits in the Disclosure Statement) appear to be to liquidate the Debtor's remaining VMW stock, Bacon stock, and HOFI Interest, and for an independent trustee to analyze and pursue Chapter 5 avoidance actions, including potential avoidance of the Non-Ordinary Course Transfers. All of this can be done by an independent Chapter 7 Trustee without the added administrative expenses associated with pursuing confirmation of a plan (even if that were a plan of liquidation) and the accrual of further fees of Chapter 11 professionals.

30.     Accordingly, cause exists to either dismiss or convert the Bankruptcy Case under section 1112(b)(4)(A) of the Bankruptcy Code.

**(ii)** **_Conversion of the Bankruptcy Case is in the estate and creditors' best interests._**

31.     Once cause is established, 11 U.S.C. § 1112(b)(1) requires the Court to determine whether converting the case to Chapter 7 or dismissing it would be in the bankruptcy estate and creditors' best interests. _See Hall v. Vance (In re Hall)_, 887 F.2d 1041, 1044 -1045 (10th Cir. 1989) (affirming dismissal of a Chapter 11 case noting that the bankruptcy court was not required to state exhaustive reasons why it chose dismissal or conversion).

32.     The Court has "broad discretion" to dismiss or convert a case. _See SBA v. Preferred Door Co. (In re Preferred Door Co., Inc.)_, 990 F.2d 547, 549 (10th Cir. 1993); _Hall v. Vance_, 887 F.2d 1041, 1044 (10th Cir.1989).

33.     Conversion of the Bankruptcy Case is in the best interest of the estate and creditors as opposed to appointing a Chapter 11 Trustee or Dismissal. Converting the case will minimize the accrual of unnecessary administrative expenses of Chapter 11 professionals but will still afford the opportunity for an independent Chapter 7 Trustee to be appointed to liquidate any viable assets and to analyze and pursue Chapter 5 avoidance actions, including potential avoidance of the Non-Ordinary Course Transfers, on behalf of the estate.

34.     Accordingly, the UST requests that, in the event the Court grants Keystone's Motion, that the Bankruptcy Case be converted to Chapter 7 so that an independent trustee may be appointed to administer the Debtor's estate.

### III.    **CONCLUSION**

35.     For the foregoing reasons, the UST has no opposition to the relief sought in the

Motion. In the event the Court grants the Motion, the UST posits that the Court should enter an

order converting the Bankruptcy Case to Chapter 7 and order such other and further relief as the

Court deems appropriate under the circumstances.

Date:   May 14, 2025                    ACTING UNITED STATES TRUSTEE
                                        Gregory M. Garvin, Acting United States Trustee


                                        By: /s/   *Matthew J. Burne*
                                        MATTHEW J. BURNE
                                        Attorney for the Acting United States Trustee

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that, on May 14, 2025, I caused a true and correct copy of the foregoing document to be electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system, as noted below:

- **J. Scott Brown**    sbrown@ck.law
- **Matthew James Burne**    matthew.burne@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov ;Brittany.Dewitt@usdoj.gov
- **Cass C. Butler**    cass@randoco.com
- **Colin R. Chipman**    colinc@randoco.com
- **Joseph M.R. Covey**    jcovey@parrbrown.com, calendar@parrbrown.com;lstumpf@parrbrown.com
- **Andres' Diaz**    courtmail@adexpresslaw.com
- **Kenyon D. Dove**    defaultservices@smithknowles.com
- **John S. Gygi**    john.gygi@sba.gov
- **Britten Jex Hepworth**    britten@rowewalton.com
- **Michael R. Johnson**    mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Richard I. Nemeroff**    ricknemeroff@nemerofflaw.com, utahbk@nemerofflaw.com
- **Engels Tejeda**    ejtejeda@hollandhart.com, slclitdocket@hollandhart.com,intaketeam@hollandhart.com;jjbutton@hollandhart.com
- **Jeffrey L. Trousdale**    jtrousdale@cohnekinghorn.com, mparks@ck.law;enilson@ck.law
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Richard R. Willie**    rich@wwpartners.co

**Manual Notice List**

**Sander L. Esserman**
Stutzman Bromberg Esserman & Plifka
2323 Bryan Street
Suite 2200
Dallas, TX 75201

**Ronald Grant Kennington**
,

**Scott Mathewson**
,

*/s/ Matthew J. Burne*