Jeremy C. Sink (9916)
jsink@kmclaw.com
Ryan Cadwallader (13661)
rcadwallader@kmclaw.com
KIRTON McCONKIE
36 South State Street, Suite 1900
Salt Lake City, UT 84111
Telephone: (801) 239-3157
Facsimile: (801) 321-4893
Proposed Attorneys for the Unsecured Creditors Committee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 25-21038 |
| HALL LABS, LLC | : | Chapter 11 |
| Debtor. | : | Honorable: Joel T. Marker |

**UNSECURED CREDITORS COMMITTEE'S OPPOSITION TO KEYSTONE PRIVATE INCOME FUND'S MOTION FOR COMFORT ORDER THAT THE AUTOMATIC STAY DOES NOT APPLY TO VANDERHALL STOCK OWNED BY THE DAVID R. HALL TRUST AND PLEDGED AS COLLATERAL TO KEYSTONE**

**The Official Committee of Unsecured Creditors** (the "Committee"), by and through proposed counsel Jeremy Sink of Kirton McConkie, opposes the Motion for Comfort Order That the Automatic Stay Does Not Apply to Vanderhall Stock Owned by the David R. Hall Trust and Pledged as Collateral to Keystone (the "Motion") filed by Keystone Private Income Fund ("Keystone"). In support of this Opposition, the Committee states as follows:

**RELIEF REQUESTED**

This Chapter 11 proceeding is still in its initial stages—underscored by the fact that the Committee only recently filed its application for employment on May 15, 2025. As the Committee begins to scrutinize the transactions that led to the Debtor's current financial distress, it has already uncovered troubling signs of inter-company transfers that may be avoidable, and

potential grounds for filing involuntary bankruptcy petitions against entities closely associated with the Debtor, including the David R. Hall Trust.

At the center of these concerns is the very asset Keystone now seeks permission to seize: the Vanderhall Stock. This stock may be subject to an avoidance action and its current ownership by the Hall Trust is questionable at best. At a minimum, the Committee must be afforded the opportunity to investigate whether this asset, which may rightfully belong to the Debtor's estate, was improperly transferred.

Further, a motion is pending to convert this case to Chapter 7—a development that could fundamentally alter the case landscape. Given these serious unresolved issues, the Committee respectfully requests that Keystone's Motion be denied at this time, or at the very least, continued for a minimum of **30 days** to allow a meaningful investigation into the Debtor's transactions and Keystone's claims.

## RESPONSE TO RELEVANT FACTS

1. Keystone and the Debtor entered into a loan agreement on August 11, 2021 (amended on January 12, 2022, February 11, 2023, and January 25, 2024, respectively). [*See* Proof of Claim 2, filed March 10, 2025].

   RESPONSE: Admit.

2. As security for the obligations owed by the Debtor under the loan agreement, the Debtor granted a lien on essentially all of its assets pursuant to a written Security Agreement dated August 11, 2021. [*Id.*]

RESPONSE: Deny. See also Debtor's Opposition to Keystone's motion for summary judgment filed in the State Court proceeding and attached hereto as Exhibit 1 and a copy of the order leaving priority issues unresolved attached hereto as Exhibit 2.

3. Keystone perfected its lien against the Debtor's assets pursuant to a UCC Financing Statement filed with the Utah Division of Corporations and Commercial Code on August 11, 2021, Filing Number 210811796492-8. [*Id.*]

RESPONSE: Deny. See Response to Fact No. 2, Statement of Additional Facts and Argument below.

4. As additional security for all obligations owed by the Debtor to Keystone under the loan agreement, the Hall Trust—a third-party non-debtor—executed and delivered to Keystone a Pledge Agreement dated February 11, 2023. [*See* Exhibit "A"].

RESPONSE: Admit that the document speaks for itself and denies any remaining allegations in paragraph 4. See also Response to Paragraphs 2 and 3 and the documents referenced therein

5. Pursuant to the Pledge Agreement, the Hall Trust assigned and pledged to Keystone 3,699,501 shares of common stock of Vanderhall Motor Works, Inc., a Delaware Corporation. [*Id.,* Schedule A].

RESPONSE: Admit that the document speaks for itself and denies any remaining allegations in paragraph 5. See also Response to Paragraphs 2 and 3 and the documents referenced therein.

6. After the Debtor defaulted on the loan from Keystone, Keystone sued to enforce the loan in Utah state court, naming the Debtor, the trustee of the Hall Trust, and two other companies as defendants. [*See* Claim 2, filed March 10, 2025]

RESPONSE:  Admit.

7. On February 7, 2025, the Utah court issued an over-$14 million judgment against the defendants.  [*See* State Court Judgment, attached as Exhibit "B"]

RESPONSE:  Admit.

8. The judgment provides, among other things, that Keystone can "proceed to obtain all pledged collateral," including the Vanderhall Stock pledged by the Hall Trust. [*Id.*, at 2].

RESPONSE:  Admit.

9. On March 5, 2025 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with this Court.

RESPONSE:  Admit.

10. Shortly after filing this case, Keystone's counsel emailed the Debtor's counsel about the Vanderhall Stock, and asked the Debtor's counsel to confirm that Keystone was not precluded from the automatic stay from exercising its non-bankruptcy rights and remedies against the Vanderhall Stock because the Vanderhall Stock is not property of the estate.

RESPONSE:  The Committee is without knowledge or information sufficient to form a belief as to the allegations in paragraph 10 and therefore denies the same.

11. Counsel for the Debtor would not provide the written confirmation requested, thus requiring Keystone to file the present motion.

RESPONSE:  The Committee is without knowledge or information sufficient to form a belief as to the allegations in paragraph 11 and therefore denies the same.

12. As of the Petition Date, Keystone's claim against the Debtor totaled $15,775,089.58, and its claim is secured by (a) the Vanderhall Stock owned by the Hall Trust, and (b) all or substantially all of the Debtor's assets, including the Debtor's separate shares in Vanderhall Motor Works, Inc. [*See* Claim 2, filed March 10, 2024].

RESPONSE: The Committee is without knowledge or information sufficient to form a belief as to the security alleged by Keystone in paragraph 12 and therefore denies the same. The Committee further incorporates the response to facts 2 and 3 above and the documents referenced therein.

## ADDITIONAL RELEVANT FACTS

13. The Debtor in the above-captioned bankruptcy proceeding recently filed its Disclosure Statement. See Docket Number 64.

14. The Debtor's Disclosure Statement makes the following statements:

    a. "The Debtor is engaged in research, development, business incubation, and other legal activities. The Debtor has a unique business model. It creates projects to develop technologies in various fields. If a project shows promise, the Debtor creates a business entity (a portfolio company) with the objective of forming a business enterprise. The portfolio company hires its own staff and may seek outside investment. The Debtor may provide administrative services, technical and scientific input, and funding. The ultimate objective is to sell the portfolio company, or the Debtor's interest in the portfolio company. Portfolio companies that have been owned in whole or in part by Debtor in the past six years are listed in Part 13 of the Statement of Financial Affairs." See Disclosure Statement pgs.

      4-5.  See also Docket No. 2, SOFA, a copy of Part 13 from the Statement of Financial Affairs is attached hereto as Exhibit 3 and incorporated herein by reference.

  b.  "In 2015, Novatek, Inc. ("Novatek"), a company previously owned by David R. Hall, was sold to Schlumberger Technologies ("Schlumberger") for approximately $129 million.  The Debtor was formed in anticipation of the Schlumberger transaction.  Prior to the consummation of the transaction, Novatek transferred to the Debtor and HPH all projects and assets that Schlumberger did not want Novatek to retain."  See Disclosure Statement p. 6 (emphasis added) Para. B-5.00 "5.00B

  c.  The Debtor's most mature and most valuable portfolio company at the time of the Schlumberger transaction was Vanderhall Motor Works, Inc.  See Disclosure Statement p. 7.

  d.  The Debtor continued to sell assets (bringing in over $86 million between the beginning of 2020 and the end of 2025, including assets sold by HPH, to keep the Debtor's operations going, meet current obligations to creditors, and reduce debt), but it stopped selling Investment Notes."  See Disclosure Statement pgs 7-8.

  e.  On or about August 11, 2021, the Debtor borrowed $10,000,000 pursuant to a Loan Agreement with Keystone Private Income Fund. . . The Keystone loan was secured by the Debtor's personal property, but there were two notable provisions that have importance in this bankruptcy.  First, the priority of Keystone's lien was disclaimed with respect to all existing debt designated as 'Permitted Indebtedness,' (as defined in the Keyston Agreement, the "Permitted

Indebtedness"). . . . Second, there was a carve-out and special provision for the Vanderhall Stock, because the Vanderhall Stock was subject to a lock-up agreement and could not be pledged. Rather than pledging 100% of the Vanderhall Stock or providing that the Vanderhall Stock was covered by Keystone's blanket lien on the Debtor's personal property, the Debtor agreed to deliver a lien, at such time as certain conditions were satisfied, on shares of Vanderhall Stock constituting 51% of the outstanding shares of capital stock of Vanderhall. . . . As a result of this arrangement, Keystone only holds a lien on other personal property of the Debtor." See Disclosure Statement pgs. 8-9.

f. HPH and DRHH also sold assets to provide funds to the Debtor to pay interest on its debts to banks, Keystone, the holders of Investment Notes, and other creditors, and to preserve the value of existing projects." See Disclosure Statement pg. 9

g. By the middle of 2024, the Debtor was forced to discontinue most funding of projects and portfolio companies. Several projects were shut down, and some portfolio companies were sold to their employees in exchange for an earnout commitment . . . to be paid I the event the business was able, at some time in the future, to generate revenues. Id.

h. HPH, DRHH, and David R. Hall have spent substantially all of their assets, except for assets identified in this Disclosure Statement, . . ."

i. . . .the Debtor will only have the ability in the short term to generate revenue only from the sale of properties owned by HPH and DRHH." See Disclosure Statement, p. 13.

    j.    As a practical matter, the Vanderhall Stock and the Company Stock . . . are the only assets of the Debtor that can satisfy creditors' claims." See Disclosure Statement p. 15.

    k.    . . .for transparency, Exhibit 3 references all liens against the Real Property, even though some of those liens do not arise from obligations of the Debtor." See Disclosure Statement p. 16. A copy of Exhibit 3 from the Disclosure Statement is attached hereto as Exhibit 4 for convenience. Exhibit 4 lists obligations owed by HPH, SmarterHome, and DRHH.

## ARGUMENT

### A. The Vanderhall Stock Was Improperly Transferred to the Hall Trust and Is Recoverable by the Estate

Keystone requests in its Motion, a comfort order from this Court allowing Keystone to "pursue its rights and remedies" against the Vanderhall stock purportedly owned by the David R. Hall Trust ("Trust"). This court must deny that request.

Keystone's request hinges on a critical factual assertion: that the Vanderhall Stock belongs to a non-debtor trust, and therefore falls outside the protections of the automatic stay. That claim collapses under scrutiny. As disclosed in the Debtor's own words in its Disclosure Statement, the Debtor developed and incubated portfolio companies, including Vanderhall Motor Works, Inc., as part of its business model. The Disclosure Statement clearly states:

> The Debtor is engaged in research, development, business incubation, and other legal activities. The Debtor has a unique business model. It creates projects to develop technologies in various fields. If a project shows promise, the Debtor creates a business entity (a portfolio company) with the objective of forming a business enterprise. The portfolio company hires its own staff and may seek outside investment. The Debtor may provide administrative services, technical and scientific input, and funding. The ultimate objective is to sell the portfolio company, or the Debtor's interest in the portfolio company. Portfolio companies

      that have been owned in whole or in part by Debtor in the past six years are listed in Part 13 of the Statement of Financial Affairs.

See Disclosure Statement, pgs. 4-5. See also Part 13 of the Debtor's Statement of Financial Affairs (Docket No. 2) listing Vanderhall Motor Works, Inc. as one of the Debtor's portfolio companies.

      The intent was for the Debtor to monetize these entities for the benefit of its creditors. Vanderhall was explicitly listed as one of these portfolio companies. There is no record showing that the Debtor received reasonably equivalent value in exchange for the stock's transfer to the Hall Trust—an entity that, according to the Disclosure Statement, held virtually no assets and was created for charitable governance, not commercial ownership. This is not speculation. It is a red flag for a classic fraudulent transfer under the Bankruptcy Code.

      While the Committee has yet to see the Declaration of Trust related to the Trust, and has yet to conduct an investigation into the transfer of the stock from the Debtor to the Trust, the Disclosure Statement indicates that the Trust likely never had assets with which to purchase the Vanderhall Stock. Thus, the transfer of the stock could not have been for fair market value. As set forth in footnote 1 of the Disclosure Statement, the Trust "is an irrevocable trust established for the governance of Hall Labs and the benefit of New Vistas Foundation, a 501(c)(3) charitable organization." See Disclosure Statement p. 4. The Trust owns "no substantial assets except its interest in the Debtor and the Vanderhall Stock." Id. The non-profit has no assets other than a $10,000 bank account. Id. The Trust had no assets to use in purchasing the Vanderhall stock and wasn't created to own or transfer assets from the Debtor. Without the payment of reasonably equivalent value from the Trust to the Debtor, the transfer of the Vanderhall stock to the Trust is an avoidable transfer. When this transfer is avoided, the Vanderhall Stock will be property of the Debtor and subject to the automatic stay.

Until this transfer is fully investigated, and unless Keystone can demonstrate that the Trust gave fair consideration for the Vanderhall Stock, this Court should treat the stock as property of the estate and subject to the automatic stay. Keystone's Motion seeks to prematurely terminate protections that may ultimately benefit the Debtor's creditors, contrary to the purpose of Chapter 11.

At the very least, this Court should preserve the status quo by denying the Motion while these critical facts are explored. Granting Keystone's request now would not only risk prejudicing the estate—it would potentially strip the estate of one of its only valuable remaining assets based on an unproven ownership claim.

### B. The Automatic Stay should be extended to The David R. Hall Trust

Even if the stock is technically held by the David R. Hall Trust, the Court should nonetheless extend the automatic stay to prevent Keystone's action.

The Trust appears to simply be an extension of Mr. Hall and his control of the Debtor. Footnote 1 from the Disclosure Statement claims that the Trust was created for the benefit of "employees and regular contractors of Hall Labs . . . and the New Vistas Foundation." See Disclosure Statement p. 4. However, wWhy would a charitable trust with no legal obligation to Keystone pledge its most valuable asset? Because the Trust appears to function as an alter ego of the Debtor. The pledging of Vanderhall Stock exclusively benefited the Debtor by enabling it to borrow funds—not the Trust. The Trust neither borrowed money nor received any tangible benefit from this pledge.

This situation falls squarely within the "unusual circumstances" doctrine under which courts have extended the automatic stay to non-debtors. The "unusual circumstances" doctrine "allows a stay to be imposed under section 362(a)(1) against a nonbankrupt party in 'unusual situations' as 'when there is such identify between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" O*klahoma Federated Gold and Numismatics, Inc. v. Blodgett,* 24F.3d at 141

Here, there is such a close identity between the Debtor and the Trust that enforcement of Keystone's remedies against the Trust would, in effect, amount to enforcement against the Debtor. The Trust appears to be a mere instrumentality of Mr. Hall and the Debtor, used to warehouse assets that should have remained within the Debtor's control.

In short, the Committee intends to investigate whether an involuntary bankruptcy petition against the Trust is appropriate.[1] Granting relief from the stay now would frustrate that investigation and risk undermining the equitable treatment of creditors. The Motion must be denied.

### C. Keystone's Security Interest in the Vanderhall Stock Is Disputed and May Not Be Perfected.

Finally, Keystone asserts that it is a secured creditor with a perfected lien on the Vanderhall Stock. But that claim is far from settled—and in fact, it is contested both by the

---

[1] Counsel for the Committee has already reached out to counsel for the Debtor to inquire as to whether a voluntary petition will be filed by the Trust.

Debtor and the Committee. According to the Disclosure Statement, the Vanderhall Stock was **not** pledged at the time of the initial Keystone loan due to a lock-up restriction. Instead, the parties agreed that the Debtor would only grant a lien upon satisfaction of future conditions. The Disclosure Statement states as follows:

> On or about August 11, 2021, the Debtor borrowed $10,000,000 pursuant to a Loan Agreement with Keystone Private Income Fund. . . The Keystone loan was secured by the Debtor's personal property, but there were two notable provisions that have importance in this bankruptcy. First, the priority of Keystone's lien was disclaimed with respect to all existing debt designated as 'Permitted Indebtedness,' (as defined in the Keystone Agreement, the "Permitted Indebtedness"). . . . Second, there was a carve-out and special provision for the Vanderhall Stock, because the Vanderhall Stock was subject to a lock-up agreement and could not be pledged. Rather than pledging 100% of the Vanderhall Stock or providing that the Vanderhall Stock was covered by Keystone's blanket lien on the Debtor's personal property, the Debtor agreed to deliver a lien, at such time as certain conditions were satisfied, on shares of Vanderhall Stock constituting 51% of the outstanding shares of capital stock of Vanderhall. . . . As a result of this arrangement, Keystone only holds a lien on other personal property of the Debtor."

See Disclosure Statement pgs. 8-9. The Disclosure Statement plainly states that this arrangement left Keystone with a lien only on the Debtor's other personal property—not on the Vanderhall Stock.

Moreover, Keystone's priority position has not been adjudicated. As referenced in the Debtor's Opposition to Keystone's summary judgment motion in state court, significant questions remain as to the nature, scope, and enforceability of Keystone's asserted security interests. A copy of the Opposition is attached hereto as Exhibit 1 and incorporated herein by reference. These unresolved issues preclude a finding that Keystone has a perfected right to this asset—particularly when the Committee and Debtor both dispute its entitlement.

These arguments on perfection and priority were not decided by the Third Judicial District Court. In its ruling the court addressed the priority and collateral arguments as follows:

"The issues raised in the pleadings as an attempt to prevent judgment do not relate to liability but rather to issues that may arise in or during the collection of the judgment, . . ." See Exhibit 2. Keystone is now attempting to collect on its debt and its actions should be stayed pending further instructions from this court and allowing the Committee or a Chapter 7 Trustee to fully analyze the Keystone transaction to preserve assets for the general unsecured creditors.

Keystone's request, if granted, would authorize an extraordinary remedy based on a disputed lien over a contested asset. This is precisely the type of overreach the automatic stay is designed to prevent. The Motion should be denied so the Committee and estate can complete a thorough review of the circumstances under which Keystone claims an interest in what may well be estate property.

## CONCLUSION

Keystone seeks an expedited path to seize the Vanderhall Stock—an asset that may very well belong to the estate and should be preserved for the benefit of all creditors. The Motion rests on contested facts, questionable transactions, and an apparent attempt to sidestep this Court's oversight in a still-developing Chapter 11 proceeding.

The Committee respectfully urges this Court to deny the Motion in its entirety or, at a minimum, continue it for 30 days to allow for further investigation. This relief is essential to protect the integrity of the estate, maintain the effectiveness of the automatic stay, and prevent irreversible harm to unsecured creditors.

.

DATED this 15th day of May 2025

/s/Jeremy C. Sink
Jeremy C. Sink
[proposed] Counsel for Unsecured Creditors Committee

# CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of May 2025, a true and correct copy of the foregoing Declaration was filed electronically with ECF and therefore served on the following parties of record:

- **J. Scott Brown**    sbrown@ck.law
- **Matthew James Burne**    matthew.burne@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Cass C. Butler**    cass@randoco.com
- **Colin R. Chipman**    colinc@randoco.com
- **Joseph M.R. Covey**    jcovey@parrbrown.com, calendar@parrbrown.com;lstumpf@parrbrown.com
- **Andres' Diaz**    courtmail@adexpresslaw.com
- **Kenyon D. Dove**    defaultservices@smithknowles.com
- **John S. Gygi**    john.gygi@sba.gov
- **Britten Jex Hepworth**    britten@rowewalton.com
- **Michael R. Johnson**    mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Richard I. Nemeroff**    ricknemeroff@nemerofflaw.com, utahbk@nemerofflaw.com
- **Engels Tejeda**    ejtejeda@hollandhart.com, slclitdocket@hollandhart.com,intaketeam@hollandhart.com;jjbutton@hollandhart.com
- **Jeffrey L. Trousdale**    jtrousdale@cohnekinghorn.com, mparks@ck.law;enilson@ck.law
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Richard R. Willie**    rich@wwpartners.co

/s/ Jeremy C. Sink