Rich Willie (Bar No. 16987)
David H. Culmer (Bar No. 13456)
**WW PARTNERS, LLC**
8941 South 700 East, Suite 202
Sandy, Utah 84070
Telephone: (208) 241-9691
rich@wwpartners.co
david@wwpartners.co

***Attorneys for Evans Development, LLC
and Jamie Evans***

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| In re: | Bankruptcy No. 25-21038 JTM |
| HALL LABS, LLC, | Chapter 11 |
| Debtor. | Honorable Joel T. Marker |

---

### JAMIE EVANS AND EVANS DEVELOPMENT'S
### MOTION FOR RELIEF FROM AUTOMATIC STAY OR,
### ALTERNATIVELY, FOR COMFORT ORDERS REGARDING SCOPE OF
### AUTOMATIC STAY

---

Jamie D. Evans, Sr. ("**Jamie**"), and Evans Development, LLC ("**Evans**

**Development**;" collectively with Jamie, "**Evans**") respectfully move for relief from the

automatic stay imposed under 11 U.S.C. § 362 or, alternatively, for entry of comfort orders

clarifying that the automatic stay: (1) does not bar continuation of pre-petition litigation in

Civil Case No. 220100154 (the "**State Case**") pending in the Fourth Judicial District Court,

American Fork Department, Utah County, for the State of Utah (the "**State Court**"),

1

against non-debtors David Hall ("**David**"); Hall Property Holdings, LLC f/k/a Newvista Property Holdings, LLC f/k/a Newvistas Property Holdings, a Utah limited liability company ("**HPH**"); DRH Holdings, LLC, a Utah limited liability company ("**DRH**;" collectively with David and HPH, the "**Hall Entities**"); Vanderhall Motor Works, Inc., a Delaware corporation ("**Vanderhall**"); Matthew Van Dyke ("**Van Dyke**"); and Brett Wilkey ("**Wilkey**;" collectively with the Hall Entities, Vanderhall, and Van Dyke, the "**Non-Debtor Defendants**"); and (2) does not prohibit Evans from seeking or moving to compel additional discovery from Debtor in the State Case.[1] If the stay applies, Evans requests its modification, as sought herein, and requests a waiver of the stay imposed by Federal Rule of Bankruptcy Procedure Rule 4001(a)(4), because proceeding against Non-Debtor Defendants in the State Case does not implicate Debtor Hall Labs, LLC (the "**Debtor**") or the Debtor's estate.

## **MEMORANDUM**

### I.    **Jurisdiction.**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion concerns the administration of the estate and therefore is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] A copy of the State Case's Docket as of June 19, 2025, is attached as Exhibit A to the Declaration of Rich Willie in Support of this Motion (the "**Willie Decl.**"), filed concurrently.

## II.    Background.

3.    Beginning around 2015, Jamie, either directly or through his related entities, the Hall Entities, and Debtor agreed to redevelop certain parcels of land as partners.[2]

4.    Jamie, either directly or through entities he controlled, invested funds and contributed services worth millions of dollars to various Hall Entities and to Debtor as investments toward the venture entered into with the Hall Entities and Debtor.[3]

5.    On information and belief, the Hall Entities and Debtor diverted Jamie's investment and the profits derived therefrom through Debtor and various Non-Debtor Defendants and used them for other purposes, including paying prior investors in Hall Labs Notes and funding Vanderhall Motor Works, Inc.[4]

6.    The Hall Entities and Debtor repudiated Jamie's partnership interest in these ventures and refused to remit investments into the venture or, alternatively, to pay him for services performed.[5]

7.    The Hall Entities' conduct, which involved material misstatements and omissions as well as deceptive practices in connection with the offer to sell Jamie an interest in the partnership(s) related to these ventures, and Jamie's reliance thereon, constitute a scheme to defraud.[6]

---

[2] *See* Complaint, at ¶¶ 16-20, Exh. B to Willie Decl. (filed under seal by Order of the Court dated June 9, 2025, Dkt. 98); Declaration of Jamie Evans in Support of this Motion (the "**Evans Decl.**"), filed concurrently, at ¶ 2.

[3] *See* Complaint, at ¶¶ 21-27, 31, 34-38, 50-57, 62-64, 80, Exh. B to Willie Decl.; Evans Decl., at ¶ 3.

[4] *See* Complaint, at ¶¶ 58-60, 75-76, 85-86, 136-141, Exh. B to Willie Decl.; Evans Decl., at ¶ 4.

[5] *See* Complaint, at ¶¶ 78, 88-91, 117, 130-135, Exh. B to Willie Decl.; Evans Decl., at ¶ 5.

[6] *See* Complaint, at ¶¶ 187-208, 267-302, Exh. B to Willie Decl.; Evans Decl., at ¶ 6.

8.    David repeatedly promised repayment yet conditioned it on Jamie's accepting Vanderhall stock.[7]

9.    Van Dyke, as Vanderhall's CFO, and Wilkey, as an officer of Debtor and HPH, knowingly assisted the Hall Entities and Debtor in the above conduct.[8]

10.    On July 14, 2022, Evans filed the State Case, seeking to recover $5,615,182.37 in damages against Debtor and each of the Non-Debtor Defendants.[9] Evans' complaint asserts causes of action for (1) equitable accounting; (2) breach of partnership agreement or contract; (3) promissory estoppel; (4) fraud – negligent misrepresentation; (5) breach of fiduciary duty; (6) unjust enrichment; (7) quantum meruit; (8) contract implied in fact; (9) conversion; (10) securities fraud; (11) civil conspiracy; and (12) fraudulent transfer.[10] Each cause of action names Debtor as a defendant.

11.    On December 2, 2022, Debtor and each of the Non-Debtor Defendants answered Evans' complaint, though Vanderhall answered separately from the other Non-Debtor Defendants. David, HPH and Debtor filed a counterclaim with their answer, as did Vanderhall.[11]

12.    In its counterclaim against Evans, Debtor, along with David and HPH, asserts causes of action for (1) unjust enrichment seeking no less than $300,000 for services performed for Evans, plus interest and attorneys' fees; and (2) declaratory judgment that,

---

[7] *See* Complaint, at ¶¶ 100-101, 117-118, 123-133, Exh. B to Willie Decl.; Evans Decl., at ¶ 7.
[8] *See* Complaint, at ¶¶ 97-100, 285-302, 304-330, Exh. B to Willie Decl.; Evans Decl., at ¶ 8.
[9] *See* State Case Docket, Exh. A to Willie Decl.; Willie Decl., at ¶ 4; Evans Decl., at ¶ 9.
[10] *See* Complaint, generally, Exh. B to Willie Decl.
[11] *See* State Case Docket, Dkt. Nos. 35, 38, Exh. A to Willie Decl.; Willie Decl., ¶ 5.

if a partnership is found between the parties, Evans owes Debtor and the other counterclaimants no less than $2,400,000 in partnership expenses.[12]

13.    Initial disclosures were served on January 30, 2023, by Evans and on March 8, 2023, by the Non-Debtor Defendants and Debtor.[13]

14.    The parties to the State Case conducted substantial written discovery in 2023, including (a) two sets of requests for production and one set each of interrogatories and requests for admission by Evans to Debtor and all Non-Debtor Defendants except Vanderhall; (b) requests for production by Evans to Vanderhall; (c) interrogatories, requests for production and requests for admission by Non-Debtor Defendants except Vanderhall to Evans; and (d) interrogatories, requests for production and requests for admission by Vanderhall to Evans.[14]

15.    On August 29, 2023, the State Court granted the parties' stipulated motion to continue hearings on several motions to dismiss and to stay proceedings to allow the parties an opportunity to settle the case. The settlement efforts failed.[15]

16.    On September 27, 2024, the State Court issued an order lifting the stay, rescheduling the hearing on the motions to dismiss, and issuing an amended scheduling order.[16]

---

[12] *See* Answer and Counterclaim, at ¶¶ 105-113, Prayer for Relief, pp. 37, 49-50, Exh. C to Willie Decl.; *see also*, Schedules of Assets and Liabilities, Dkt. 2, at ECF 12-13 ¶75.

[13] *See* State Case Docket, Dkt. Nos. 60, 90, 92, and 129, Exh. A to Willie Decl; Willie Decl., at ¶ 6.

[14] *See* Willie Decl., at ¶ 7.

[15] *See* Willie Decl., at ¶ 8.

[16] *See* Willie Decl., at ¶ 9.

17.     From November 25, 2024, through January 30, 2025, the parties to the State Case filed three separate motions under Rule 37 of the Utah Rules of Civil Procedure, including two motions to compel discovery which remain undecided by the State Court, both of which involve Evans, Debtor and the Non-Debtor Defendants.[17]

18.     On February 3, 2025, the State Court heard the motions to dismiss, issuing its ruling thereon on March 10, 2025.[18]

19.     On February 20, 2025, the State Court issued an order granting the parties' stipulated motion to amend the scheduling order.[19]

20.     On March 5, 2025 (the "**Petition Date**"), the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. Dkt. 1.

21.     In its Schedules of Assets and Liabilities (the "**Schedules**"), the Debtor declared that it owned 100% of the membership interests in Non-Debtor Defendants Hall Property Holdings, LLC and DRH Holdings, LLC, and 51% of the stock of Non-Debtor Defendant Vanderhall Motor Works, Inc. *See* Schedules, Dkt. 2 at ECF 7-8 ¶¶15.4-15.6.

22.     In its Schedules, the Debtor declared:

> The Debtor uses office and lab space that is leased by its subsidiary, Hall Property Holdings, LLC from an unaffiliated landlord and subleased to Vanderhall Motor Works, Inc. then sub-subleased by Hall Property Holdings, LLC from Vanderhall Motor Works, Inc. It is a month-to-month lease. Hall Property Holdings, LLC and DRH Holdings, LLC own parcels of real property, which are included in the values of those entities under Item 15.

---

[17] *See* Willie Decl., at ¶ 10.

[18] *See* Willie Decl., at ¶ 11.

[19] *See* Order Granting Stipulated Motion to Amend Scheduling Order, Exh. E to Willie Decl; Willie Decl., at ¶ 12.

Schedules, Dkt. 2 at ECF 10 ¶55.1.

23.     In its Schedules, the Debtor declared as one of its assets the following "[o]ther contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims":

> In connection with a certain lawsuit filed by Jamie Evans against the Debtor and certain other parties, the plaintiff has alleged the existence of a partnership between the plaintiff and the defendants. Defendants deny the existence of a partnershkp [*sic*]. In the alternative, however, if a partnership is found to exist, defendants have asserted that plaintiffs would owe defendants at least $2,700,000.00. The Debtor values the interest in the counterclaim at $0.00 because it does not believe a partnership exists.

Schedules, Dkt. 2 at ECF 11-13 ¶75. These claims are the counterclaims asserted by Debtor and related parties in the State Case.[20]

24.     In its Schedules, the Debtor declared as its own the following "debtor's property that is subject to a lien":

    a.  "Real property owned by Hall Property Holdings, LLC" and valued at approximately $5.6 million. Schedules, Dkt. 2 at ECF 25 ¶ 2.1.

    b.  "Real property in Utah county owned by Hall Property Holdings, LLC" and valued at approximately $2.0 million. Schedules, Dkt. 2 at ECF 25 ¶ 2.2.

    c.  "Real property in Utah currently owned by Hall Property Holdings, LLC" and valued at approximately $5.6 million. Schedules, Dkt. 2 at ECF 26 ¶ 2.3.

    d.  "Real property in Salt Lake County owned by DRH Holdings, LLC" and valued at approximately $350,000. Schedules, Dkt. 2 at ECF 26 ¶ 2.4.

---

[20] *See* Answer and Counterclaim, at ¶¶ 105-113, Prayer for Relief, pp. 37, 49-50, Exh. C to Willie Decl.

e.  "Equipment owned by Hall Property Holdings, LLC, cranes, equipment and machinery" and valued at approximately $122,360. Schedules, Dkt. 2 at ECF 26 ¶ 2.5.

f.  "[L]ife insurance policy owned by David Hall." Schedules, Dkt. 2 at ECF 27 ¶ 2.6.

g.  "[R]eal property in Wasatch County owned by DRH Holdigs [*sic*], LLC." Schedules, Dkt. 2 at ECF 27 ¶ 2.6.

h.  "All assets of Hall Property Holdings, LLC" and valued at approximately $122,360. Schedules, Dkt. 2 at ECF 28 ¶ 2.9.

i.  "Laser Machine owned by Vanderhall Motor Works, Inc., an affiliate of the Debtor" and valued at approximately $166,667. Schedules, Dkt. 2 at ECF 29 ¶ 2.11.

25.    In the Schedules, the Debtor identified all three of the non-debtor Hall Entities as "codebtor[s]" to multiple creditors of the Debtor. *See* Schedules at ECF 65-70.

26.    On or about March 11, 2025, Evans' counsel was served with the Notice of Chapter 11 Bankruptcy Case in this action ("**Bankruptcy Notice**"), which states:

> For the debtor listed above [Hall Labs, LLC], a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.
>
> …
>
> The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. [21]

---

[21] *See* Bankruptcy Notice, Exh. F to Willie Decl.; Willie Decl., at ¶ 13.

27.    On March 21, 2025, Evans filed the Bankruptcy Notice in the State Case along with a motion requesting a conference under Rule 16 of the Utah Rules of Civil Procedure to address the impact of Debtor's bankruptcy on the State Case.[22]

28.    On May 5, 2025, the State Court held a hearing under Rule 16 ("**Hearing**") where the Non-Debtor Defendants argued that, because of the stay imposed by § 362 and as set forth in the Bankruptcy Notice, the State Case ought to be stayed in its entirety. Ruling from the bench, the State Court issued an order staying the State Case in its entirety, including any proceedings of any nature against, involving or pertaining to the Non-Debtor Defendants.[23]

29.    Evans intends to conduct additional discovery in the State Case regarding fraudulent transfers between Debtor and the Non-Debtor Defendants (particularly Vanderhall) and regarding a Ponzi scheme engaged in by Debtor and Non-Debtor Defendants wherein funds paid by Evans and other subsequent holders of notes issued by Debtor were subsequently used to pay prior note holders. Discovery is also required to show that Debtor was insolvent at the time Debtor made the foregoing transfers. During the February 3, 2025, hearing on the motions to dismiss, the State Court invited Evans to file a motion for summary judgment with respect to these issues. But for the stay, Evans anticipates that it would have filed its motion for summary judgment by now.[24]

---

[22] *See* State Case Docket, Dkt. Nos. 279-280, Exh. A to Willie Decl; Willie Decl., at ¶ 14.

[23] *See* Willie Decl., at ¶ 15.

[24] *See* Willie Decl., at ¶ 16.

30.     The discovery sought would include, at a minimum, Debtor's bank statements and account information, records of transfers to and from Debtor, and emails and other communications between Debtor, Non-Debtor Defendants and other parties that may be relevant to such claims. This discoverable information is in the possession, custody and control of Debtor. Additionally, depositions of Debtor's Rule 30(b)(6) witness(es) have yet to occur.[25]

31.     The unresolved motions to compel responses to written discovery require the State Court's decision. Evans intends to file additional motions to compel against Debtor and Non-Debtor Defendants regarding documents they refuse to produce in response to discovery requests. Without the foregoing discovery and motions to compel, Evans will be unable to prosecute its claims against the Non-Debtor Defendants in the State Case.[26]

## III.   Legal Standard.

32.     Subsections 362(a), 362(d), and 105(a) govern this motion.

33.     Subsection 362(a) prescribes that, with unapplicable exceptions, a petition for relief under the Bankruptcy Code "operates as a stay, appliable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding <u>against the debtor</u> that was or could have been commenced before the commencement of the case, or to recover a claim <u>against the debtor</u> that arose before the commencement of the case under" the Code. 11 U.S.C. § 326(a) (emphasis added).

---

[25] *See* Willie Decl., at ¶ 17.
[26] *See* Willie Decl., at ¶¶ 18-19.

34.     In turn, § 362(d) provides, in relevant part, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay . . . for cause . . . ." 11 U.S.C. § 362(d)(1). "The term 'cause' is not defined in the Bankruptcy Code", leaving such a decision to the "exercise of the court's discretion." *In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984) ("***Curtis***").

35.     Under §105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. §105(a). In particular, at least one other court within the Tenth Circuit has held that "[t]he power to issue comfort orders is encompassed within § 105 of the Bankruptcy Code . . . ." *In re FDV Artfolio LLC*, No. 19-11661-JDL, 2019 WL 2246713, at *2 (Bankr. W.D. Okla. May 23, 2019).

## IV.    Argument.

### A. The Stay Should be Lifted to Permit Evans to Proceed Against Debtor in the State Case.

36.     "Motions for relief from the automatic stay are often filed so litigation pending in another forum can proceed to judgment. In such situations, the Tenth Circuit has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *In re Bridge*, 600 B.R. 98, 102 (Bankr. D. N.M. 2019) (citing *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011)). In making such determinations, the *Curtis* court's "multi-factor analysis without a single dispositive factor" has "long provided guidance in assessing the merits of a motion for relief from stay to allow the

continued prosecution of litigation pending at the time of the bankruptcy filing." *In re VidAngel, Inc*., 593 B.R. 340, 345-346 (Bankr. D. Utah 2018) ("***VidAngel***"); *see also, Curtis*, at 799-800 (setting forth the twelve *Curtis* factors). Each of the *Curtis* factors will be discussed in turn.

37.    **First**, whether the relief will result in a partial or complete resolution of the issues.

38.    "When the causes of action are based on non-bankruptcy law, and the litigation was beyond its initial stages, bankruptcy courts generally grant relief from stay to allow the court with original jurisdiction to liquidate the claim for purposes of administration in the bankruptcy case." *VidAngel*, at 346 (ruling that liability and liquidation of damages would be determined in the action previously stayed under § 362, leaving the bankruptcy court to determine core bankruptcy issues about the treatment of those claims under the bankruptcy plan).

39.    The issues to be resolved under this factor are those presented in the underlying, non-bankruptcy forum, not issues relating thereto in the bankruptcy proceeding. *See In re Touchstone Home Health LLC*, 572 B.R. 255, 282 (Bankr. D. Colo. 2017) ("Liquidating the amount of the Claim would fully resolve the underlying dispute."); *In re Horizon Womens Care Professional LLC*, 506 B.R. 553, 558 (Bankr. D. Colo. 2014) ("Granting relief from stay will result in complete resolution of the state court litigation. [Adversary proceeding and state court action] are wholly separate matters and the claims relating to the Employment Agreement that the Debtor brought and litigated in the state court need to be finally resolved in a state forum.")

40.     Here, relief from the stay will result in complete resolution of the issues.
Determining the Debtor's liability and then, if necessary, damages would liquidate
Evans' claims. This complete resolution of the State Case claims is properly and squarely
before the State Court, the court of original jurisdiction, including over Debtor's claims
against Evans. Those liquidated claims could then be administered before this Court. The
State Court is fully capable of resolving all of the issues between Evans and Debtor. This
factor favors relief from the stay.

41.     **Second**, the lack of any connection with or interference with the bankruptcy
case.

42.     Here, although Evans' claims are connected with the bankruptcy case,
because their "resolution can occur in the original judicial forum more expeditiously than
in the bankruptcy court, relief should be granted to allow it to proceed." *VidAngel*, at 347.
The State Case is well advanced, favoring relief from the stay. Moreover, establishing
liability in the State Case, without more, would not interfere with the bankruptcy case.

43.     **Third**, whether the foreign proceeding involves the debtor as a fiduciary:
Inapplicable.

44.     **Fourth**, whether a specialized tribunal has been established to hear the
particular cause of action and that tribunal has the expertise to hear such cases.

45.     Where the prior forum has "extensive history and experience with the parties,
their claims, and their defenses," it has "greater expertise as to the specific facts and law
relevant to a resolution" of the case. *VidAngel*, at 348.

46.     Here, the State Court has heard multiple motions of the parties, is familiar with their claims and defenses, as well as key evidence adduced thus far, and has invited a motion for summary judgment, which Evans has begun and intends to file should the stay be lifted. The State Court may not be a specialized court, but its experience with the State Case favor relief from the stay.

47.     **Fifth**, whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation: Inapplicable.

48.     **Sixth**, whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.

49.     The State Case involves claims against both the Non-Debtor Defendants and Debtor. Evans' State Case claims significantly implicate the Non-Debtor Defendants and broader issues beyond just Debtor's liability. Although much discovery has taken place, due to the undecided motions to compel and additional discovery. In any event, as argued in Section IV, C, below, discovery from Debtor is critical to claims against and by the Non-Debtor Defendants in the State Case.

50.     **Seventh**, whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.

51.     If Evans prevails on its claims, it could impact other creditors, but that impact may be positive if, for example, Evans prevails on its fraudulent transfer claim and brings assets into the bankruptcy estate. Even if the impact were negative, "the fact that the litigation may dilute the ultimate return to other creditors does not constitute legal prejudice to the rights of such creditors." *VidAngel*, at 349. This factor favors relief from the stay.

52.     **Eighth**, whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c): Inapplicable.

53.     **Ninth**, whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f): Inapplicable.

54.     **Tenth**, the interest of judicial economy and the expeditious and economical determination of litigation for the parties.

55.     "The interests of judicial economy and efficiency are best-served by liquidating claims before the court that knows the parties and the factual and legal issues and can schedule final hearings in short order." *VidAngel*, at 349 (internal citations omitted).

56.     Here, the State Case is far advanced and the State Court is well-familiar with the parties and their claims, the facts, and the legal issues. The State Court even invited Evans' motion for summary judgment during the February 3, 2025, hearing on the motions to dismiss held one month prior to the March 5 Petition Date. Five days later, on March 10, 2025, the State Court issued its ruling on the motions to dismiss and the next day Evans counsel was served with the Bankruptcy Notice. Evans and the State Case defendants are currently scheduled to file a certificate of readiness for trial on February 28, 2026 (which may be postponed depending on current actions). But for the stay, Evans anticipates that it would have filed its motion for summary judgment by now.

57.     **Eleventh**, whether the foreign proceedings have progressed to the point where the parties are prepared for trial.

58.     This factor "contemplates the situation in which the debtor is a party to a prepetition action that has progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in the bankruptcy court." *Curtis*, at 805. In *VidAngel*, this factor was found in favor of relief from stay, given a pending motion for summary judgment and a trial set less than eight months from the petition date. *VidAngel*, at 350.

59.     Here, the facts are little different from those in *VidAngel*. Discovery is well advanced, substantial motion work is completed, including the dismissal of certain claims, a motion for summary judgment has been invited, begun and awaits the lifting of the stay, and Evans intends to proceed to trial in early 2026. Unlike in *Curtis*, Debtor will not be subjected to substantial additional work in State Case if stay lifted because Debtor has fully participated in the State Case from the inception. *Curtis*, at 805. And, in any event, the expense and effort to which Debtor will be subjected to resolve the factual and legal issues raised in the State Case will be required in any event in order to resolve the parties' claims, including Debtor's own counterclaims in the State Case. Doing so in the State Case will impose no greater hardship.

60.     **Twelfth**, the impact of the stay on the parties and the "balance of hurt."

61.     "The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate." *Curtis*, at 806. "Financial hardship to the movants must, of course, be balanced against financial hardship to the debtors." *Id*.

16

62.    Here, administration of estate is benefited by lifting the stay. The State Court is capable of bringing the State Case to a swift conclusion. Debtor has already participated and invested in the State Case to bring it to a point where the trial court is prepared to begin rendering decisions. The issues before the State Court—both Evans' claims against Debtor and Debtor's own claims against Evans[27]—will need to be resolved in any event in order to close Debtor's bankruptcy. The financial hardships for all parties in the State Case, not merely Debtor and Evans, will be greater in the bankruptcy court because of additional work necessary to ramp up the case. This hardship will be borne by all of the Non-Debtor Defendants, as well as Debtor and Evans, because the claims and counterclaims involve all of these parties and cannot be tried separately. This factor weighs heavily in favor of relief from the stay.

**B. If the Court Declines to Lift the Stay, a Comfort Order Should Issue that the Stay Does Not Apply to Evans' Claims Against Non-Debtor Defendants.**

63.    Despite the Bankruptcy Notice, the automatic stay does not apply to Evans' claims against Non-Debtor Defendants.

64.    "By its terms, the automatic stay applies only to the Debtor and does not prevent actions against non-debtor principals, officers, employees, and other related parties." *In re Vector Arms, Corp.*, 2015 WL 8999261, at *6 (Bankr. D. Utah Dec. 11, 2015) (citing *Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141

---

[27] "It is imperative to note that when a debtor declares bankruptcy, an estate is created of the debtor's prepetition property, and that estate encompasses all kinds of property, including ... causes of action." *In re Hafen*, 640 B.R. 581, 589 (Bankr. D. Utah 2022) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (quotations omitted)); *see also*, 11 U.S.C. § 541(a)(1); *In re M & L Business Mach. Co., Inc.*, 136 B.R. 271, 275 (Bankr. D. Colo. 1992) (The property of the bankruptcy estate "includes all legal and equitable interests the debtor held in property, including causes of action upon the filing of the bankruptcy petition.").

(10th Cir. 1994)); *see also, Onset Financial, Inc. v. Future Legends LLC*, 2024 WL 4851612, at *1 (D. Utah Nov. 21, 2024) ("[A]n automatic stay applies to the debtor and property of the debtor's estate."). "The weight of authority indicates that although the stay provided by 11 U.S.C. § 362(a) is automatic as to the debtor, it is not automatic as to others. Unless the bankruptcy court expressly extends the stay to others, it applies by its literal terms only to the debtor." *Fisher Sand & Gravel Co. v. Western Sur. Co.*, No. CV09-727 WPL/RLP, 2009 WL 4099768, at *4 (D. N.M. 2009) (quoted by *Vector Arms*, 2015 WL 8999261, at *6). Moreover, if a party wishes to extend the automatic stay in § 362(a) to non-debtor parties under § 105(a), that party "must affirmatively seek an order from the bankruptcy court." *Vector Arms*, 2015 WL 8999261, at *6; *see also, Onset Financial, Inc.*, 2024 WL 4851612, at *1 (quoting *Vector Arms*, 2015 WL 8999261, at *6)).

65.     Here, the Court has not expressly extended the stay to the Non-Debtor Defendants and such extension is not warranted. Instead, the Debtor has essentially attempted to circumvent § 362's limitations by (a) scheduling as its own the assets of the Non-Debtor Defendants, and (b) successfully arguing during the Hearing that the State Case ought to be stayed in its entirety. Neither tactic is availing for four reasons.

66.     **First**, "[t]he fact that an individual debtor holds an interest in another entity does not give that individual a direct ownership interest in the assets owned by the other entity." *Gallan v. Bloom Bus. Jets, LLC*, 480 F. Supp. 3d 1173, 1183 (D. Colo. 2020); *see also, In re Murray*, 147 B.R. 688, 690 (Bankr. E.D. Va. 1992) (denying debtor's motion for enforcement of the automatic stay to protect property owned by a corporation in which she was the sole shareholder because of her husband's death). Correspondingly, the

Debtor's appropriation of the corporate Non-Debtor Defendants' purported assets does not automatically extend the stay under § 362 to prevent Evans from continuing to prosecute its claims against the Non-Debtor Defendants.

67.     **Second**, the Debtor's Bankruptcy Notice is procedurally and substantively deficient to stay the State Case as to the Non-Debtor Defendants. In *Vector Arms*, this Court held that "unlike the automatic stay in §362(a), the party seeking to invoke an extension of the stay under § 105(a) must affirmatively seek an order from the bankruptcy court." *Vector Arms*, 2015 WL 8999261, at *6; *see also, Onset Financial, Inc.*, 2024 WL 4851612, at *1 (quoting *Vector Arms*, 2015 WL 8999261, at *6)). The Debtor has not made such a request here. Nor could the Debtor meet the heightened standard that governs such extraordinary relief. *See In re Arrow Huss, Inc*., 51 B.R. 853, 857-859 (Bankr. D. Utah 1985). "The power to prevent creditors from proceeding against nondebtors must only be used in extraordinary cases, and not simply to 'assist' the debtor in reorganizing or to relieve general 'pressure' on the debtor." *Id*. at 858. Because "[t]he movant's burden of proof is a heavy one and must be supported by substantial evidence," "injunctions to protect nondebtor co-obligors are seldom granted by this Court." *Id*. at 859. Here, prosecution of the State Case against the Non-Debtor Defendants does not threaten the Debtor's estate. And the Debtor has not and cannot submit "substantial evidence" that Evans would disrupt its reorganization efforts by liquidating its independent claims against the Non-Debtor Defendants.

68.     **Third**, the State Court's stay of the State Case in its entirety, including all proceedings against the Non-Debtor Defendants, is mistaken. This court has jurisdiction to issue a comfort order clarifying the scope of the stay under § 362. *See* 28 U.S.C.

§ 157(b)(2)(A), (G) (matters concerning the administration of the estate and motion to terminate, annul, or modify the automatic stay are "core proceedings"); *see also*, 11 U.S.C. § 362(j) ("[o]n request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated"). The Tenth Circuit Bankruptcy Appellate Panel has held that "[t] relief granted pursuant to [§362(j)] is often called a 'comfort order,' as it is typically needed by claimants to satisfy state courts that the underlying dispute may proceed despite pendency of a bankruptcy case." *In re Thomas*, 469 B.R. 915, 921 (B.A.P. 10th Cir. 2012). In this instance, the Court need not confirm that the stay has been "terminated" because it was never applicable to the Non-Debtor Defendants in the first place. But a comfort order clarifying the scope of the stay would assist the State Court in limiting the Bankruptcy Notice filed in the State Case and the State Court's order staying the entire State Case, for the same reasons stated in *Thomas*.

69.    **Fourth**, even if the automatic stay applied, there is "cause" under § 362(d) to terminate it so that the State Case may proceed against the Non-Debtor Defendants. Such "[c]ause can be found 'when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial.'" *In re Bergmann*, 599 B.R. 348, 356 (Bankr. D. Idaho March 6, 2019) (quoting 3 Collier on Bankruptcy, ¶ 362.07[3][a] (Alan Resnick & Henry J. Sommer eds., 16th ed.). Here, the State Case involves multiple nondebtor parties who have not sought let alone met their burden of showing that the automatic stay should extend to them. These include multiple defendants who engaged in and are still engaging in a shell game. Evans has conducted discovery about the purpose of the funds Evans paid to the Hall Entities and intends to file

a motion for summary judgment on this dispositive issue, as well as conducting additional

discovery regarding fraudulent transfers between the Non-Debtor Defendants. Upon the

entry of the order sought herein, Evans is prepared to continue with these proceedings

against the Non-Debtor Defendants so that it can liquidate its claims against them. Thus, if

the stay applies at all, then a modification of the same is warranted so that Evans can

liquidate its claims against the Non-Debtor Defendants. Such relief should not be subject

to the 14-day stay generally applicable under Rule 4001(a)(4) because Evans is not

proceeding against the Debtor or its assets in the State Case.

### C. If the Court Declines to Lift the Stay, a Comfort Order Should Issue that the Stay Does Not Apply to Discovery Sought from Debtor in the State Case.

70.    Because the automatic stay under § 362 does not encompass non-bankrupt

co-defendants, claims against such co-defendants may be prosecuted and discovery

regarding those claims may be pursued. *See In re Miller*, 262 B.R. 499, 503-504 (9th Cir.

BAP 2001). "Certain actions, including requests for discovery, may be taken against a

debtor without violating the automatic stay." *Bass v. PJCOMM Acquisition Corp*., Civ No.

09-cv-01614-REB-MEH, 2011 WL 5417083, at *3 (D. Colo. Nov. 8, 2011) (citing *In re*

*Miller*, 262 B.R. at 505) (denying motion to compel on other grounds).

71.    In *In re Miller*, a state court plaintiff subpoenaed its key witness, the

counterclaimant in state court and then-debtor in a subsequently filed chapter 13

bankruptcy, to testify regarding the plaintiff's state court claims against the debtor's non-

bankruptcy debtor co-defendant and filed a motion to compel such testimony. 262 B.R. at

500-501. On motion, the debtor obtained an order that the plaintiff's counsel was in

contempt for violating the automatic stay. *Id*. at 502. On plaintiff's appeal from that order, the *In re Miller* court held that the stay was not violated because "section 362(a)(1) is inapplicable to Appellants' subpoenas to Debtor where those subpoenas were part of Appellants' discovery regarding claims that were not stayed." *Id*. at 503, 507. If the opposite were true, "a debtor could never be called as a witness (even in actions where the debtor is not a party) without relief from the stay. Such an interpretation of section 362(a) defies common sense and the spirit of the Code." *Id*. at 505. As *In re Miller* observed,

> Information is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay.

*Id*.

72.    Citing *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 140 B.R. 969, 9780979 (N.D. Ill. 1992), *In re Miller* further clarified:

> Because the discovery aimed at [debtor] and its employees did not violate the automatic stay to the extent it pertained to litigation of other non-debtor defendants, the *Mahurkar* court ordered that depositions of [debtor's] employees could occur…. Like the *Mahurkar* court, this panel believes that section 362(a) does not preclude generation of information regarding claims by or against a non-debtor party, even where that information could eventually adversely affect the Debtor.

*Id*. 504-505.

73.    "While the cost of defending in a civil action has been given serious consideration by bankruptcy courts, no case has found the cost of defending, by itself, to be 'great prejudice' as to bar modification of the [§ 362] stay." *In re Harris*, 85 B.R. 858, 860 (Bankr. D. Colo. 1988) (cited by *In re Walker*, 927 F.32d 1138, 1143 (10th Cir. 1991)).

74.     Here, discovery regarding fraudulent transfers, a Ponzi scheme, and Debtor's insolvency at the time of such transfers is critical to Evans' intended motion for summary judgment. Such discovery would include Debtor's bank statements and records of funds transfers, at least, all of which is in Debtor's sole custody and control. Also critical to such discovery are emails and other communications between Debtor, including its officers Van Dyke and Wilkey, other Non-Debtor Defendants and third parties, such as transfer agents. But even if such communications were sought from Van Dyke or Wilkey, instead of directly from Debtor, Van Dyke's and Wilkey's communications remain affiliated with Debtor because of their positions with Debtor, Van Dyke as erstwhile CFO and Wilkey as a current officer. Evans has not yet deposed Debtor's Rule 30(b)(6) witness(es) regarding the foregoing or other aspects of the State Case and motions to compel, both pending and yet to be filed, are necessary to complete discovery in the State Case.

75.     All of this discovery is necessary for Evans to proceed against the Non-Debtor Defendants in the State Case. Unless Evans is permitted to proceed, including by issuing discovery requests to, subpoenaing witnesses of, and prosecuting motions to compel against Debtor and its officers, Evans' claims against the Non-Debtor Defendants will be hamstrung.

76.     Accordingly, because the automatic stay does not preclude Evans' pursuit of its claims against the Non-Debtor Defendants and discovery relevant to those claims must come from Debtor, even if and to the extent it were a non-party to the State Case due to the stay, the Court should issue a comfort order clarifying that such discovery may immediately proceed in the State Case. As with its request for a comfort order to proceed

against the Non-Debtor Defendants, the comfort order regarding discovery should also not be subject to the 14-day stay under Rule 4001(a)(4) because Evans is proceeding against the Non-Debtor Defendants, not Debtor.

**V.    Conclusion.**

77.    For the foregoing reasons, Evans respectfully requests entry of an order granting relief from the automatic stay. Alternatively, Evans requests entry of a comfort order confirming that the automatic stay (1) does not bar prosecution of the State Case against Non-Debtor Defendants; and (2) does not prohibit Evans from seeking or moving to compel additional discovery from Debtor in the State Case. Evans also requests entry of an order allowing Evans to immediately proceed without regard for the 14-day stay under Rule 4001(a)(4).

Dated: June 20, 2025

*/s/ Rich Willie*
Rich Willie
WW Partners, LLC

**CERTIFICATE OF SERVICE BY ELECTRONIC NOTICE (CM/ECF)**

       I hereby certify that on June 20, 2025, I caused the foregoing document to be electronically filed with the United States Bankruptcy Court for the District of Utah using the CM/ECF system, which sent a Notice of Electronic Filing to all of the electronic filing users in this case. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users.

- **Jacob D. Barney**    jbarney@aklawfirm.com, sholland@aklawfirm.com
- **J. Scott Brown**    sbrown@ck.law
- **Matthew James Burne**    matthew.burne@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Cass C. Butler**    cass@randoco.com
- **Deborah Rae Chandler**    dchandler@aklawfirm.com
- **Colin R. Chipman**    colinc@randoco.com
- **Joseph M.R. Covey**    jcovey@parrbrown.com, calendar@parrbrown.com;lstumpf@parrbrown.com
- **David H. Culmer**    david@wwpartners.co
- **Andres' Diaz**    courtmail@adexpresslaw.com
- **Kenyon D. Dove**    defaultservices@smithknowles.com
- **Tyler Scott Erickson**    tserickson@hollandhart.com
- **John S. Gygi**    john.gygi@sba.gov
- **Britten Jex Hepworth**    britten@rowewalton.com
- **Michael R. Johnson**    mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Timothy J. Larsen**    tlarsen@adexpresslaw.com
- **Richard I. Nemeroff**    ricknemeroff@nemerofflaw.com, utahbk@nemerofflaw.com
- **Jeremy C. Sink**    jsink@kmclaw.com, mcarlson@kmclaw.com
- **Engels Tejeda**    ejtejeda@hollandhart.com, slclitdocket@hollandhart.com,intaketeam@hollandhart.com;jjbutton@hollandhart.com
- **Michael F. Thomson**    thomsonm@gtlaw.com, stuverm@gtlaw.com;Suzanne.Williams@gtlaw.com;ut17@ecfcbis.com
- **David Richards Todd**    dave@cullimore.net
- **Jeffrey L. Trousdale**    jtrousdale@cohnekinghorn.com, mparks@ck.law;enilson@ck.law
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Richard R. Willie**    rich@wwpartners.co

## <u>CERTIFICATE OF SERVICE BY MAIL OR OTHER MEANS</u>

I further certify that on June 20, 2025, I caused to be served a true and correct copy of the foregoing document by First-class U.S. mail, postage pre-paid, and addressed to the parties listed below, including the Debtor and the Non-Debtor Defendants in the State Case:

1.      Hall Labs, LLC, PO Box 51440, Provo, UT 84605

2.      Hall Property Holdings, LLC, DRH Holdings, LLC, David R. Hall, Matthew Van Dyke, Brett Wilkey c/o Brammer Ranck LLP, Attn. J. Brady Brammer, 3300 N Triumph Blvd, STE 100, Lehi, UT 84043, and via email at bbrammer@brfirm.com; sdansie@brfirm.com.

3.      Vanderhall Motor Works, Inc., c/o James Dodge Russell & Stephens, P.C., Attn. Justin James, 10 W. Broadway, Suite 400, Salt Lake City, Utah 84101, and via email at jjames@jdrslaw.com.

4.      Mark C. Rose, McKay, Burton & Thurman, P.C., Chapter 11 Trustee for Debtor, 2180 S 1300 E Ste 400, Salt Lake City, UT 84106, and via email at mrose@mbt-law.com

*/s/ Rich Willie*
Rich Willie